UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
ex rel. BRIAN VINCA and
JENNIFER STAUP SWEENEY

Case No. 8:11-CV-176-T30MAP

    Plaintiffs

v.

ADVANCED BIOHEALING, INC.

    Defendant.
_____/

**NOTICE OF ATTORNEYS' CHARGING LIENS BY BARRY A. COHEN, P.A., SAADY & SAXE, P.A., AND KEVIN J. DARKEN**

**PLEASE TAKE NOTICE** that Barry A. Cohen, P.A. ("Cohen Firm"), Saady & Saxe, P.A. ("Saady Firm") and Kevin J. Darken ("Darken") do hereby, individually and jointly and severally to the extent of their interests, assert attorney's charging liens based upon legal work, labor and services performed for Relator Brian Vinca in this action pursuant to a written contingent fee contract for same ("Retention Agreement"). These liens attach pursuant to specific provisions of the Retention Agreement and Florida common law, as more fully set forth below.

1. Mr. Vinca and Co-Relator Jennifer Sweeney jointly entered into the Retention Agreement with the Cohen Firm, on November 3, 2010. The Retention Agreement included a provision for Consent to Referral of Case authorizing the Saady Firm as additional attorneys authorized to represent Mr. Vinca in this action.

2. The Retention Agreement provided, *inter alia*, that the Cohen Firm and the Saady

Firm would provide the legal services identified in the Retention Agreement. These services included presentation of Mr. Vinca's claims to the Government through the filing of a case under the False Claims Act[1] ("Case") and attempting to obtain the intervention of the Government into the Case. The Retention Agreement specifically limited the Cohen Firm's and the Saady Firm's representation to preparation for and litigation of the Case. The Retention Agreement expressly provides that "the representation contemplated under this agreement does not include any other legal proceeding or claims that may arise, including any appeals or original proceedings in appellate courts that result or arise from the Claims."

3. The Retention Agreement further provided that in the event Mr. Vinca terminated the Retention Agreement, more than three business days after he executed it, the Cohen Firm and the Saady Firm would have a lien for all attorney's services provided to Vinca and for all costs and expenses incurred on his behalf in connection with the legal representation provided to him. The lien also covers all fees and costs incurred to enforce the Cohen Firm's and the Saady Firm's rights to monies owed them under the Retention Agreement.

4. Kevin J. Darken, a former federal prosecutor in the Middle District of Florida who specialized in health care fraud cases, was hired by the Cohen Firm in 2002 and began filing FCA cases for the Cohen Firm in 2004. Mr. Darken signed the Vinca contingent fee agreement for the Cohen Firm; drafted the relator disclosure memorandum, drafted Vinca and co-relator Sweeney's FCA complaint and amended complaint; attended the relator interviews; responded to information requests from DOJ lawyers; provided damages research and evidence to DOJ

---

[1] Relator Vinca had knowledge of and evidence showing only fraud on the Medicare program and not on other federal programs such as the Tricare, Medicaid and Veterans Administration programs. Accordingly, as required by Fed. R. Civ. P. 11, the Vinca/Sweeney complaint alleged only fraud on the Medicare program. However, all attorneys representing Mr. Vinca argued in Vinca's first to file motion and responses to motions by other relators that his Complaint and Amended Complaint entitled Vinca to all FCA recoveries in all federal government programs. Prior to this Court's ruling on Vinca's first to file Motion, Vinca elected to and did voluntarily settle his first to file dispute with Relator Harvey.

lawyers; negotiated the settlement of Relator Vinca's retaliatory termination claim; drafted all the first to file motions and other motions for Relators Vinca and co-relator Sweeney in this case; and wrote the lengthy and detailed relator share award letter to the Department of Justice which resulted in the 20 percent relator share offer that Mr. Vinca accepted.

5. Pursuant to an internal compensation arrangement, which began when Mr. Darken started filing FCA cases for the Cohen Firm in 2004, Mr. Darken was granted an individual interest in and ownership of an agreed percentage of fees that the Cohen Firm was due in FCA cases filed and prosecuted by Darken. This internal compensation arrangement and Darken's interest in and ownership of FCA fees applied to the Vinca/Sweeney case. This internal compensation arrangement gives Darken the right to file his own independent charging lien in this case. *Barwick, Dillian & Lambert, P.A. v. Ewing,* 646 So.2d 776, 779-80 (Fla. 3rd DCA 1994); *Travelers Property Casualty Company of America v. Paramount Lake Eola, L.P.*, 2010 WL 2977981, *5 (M.D. Fla., June 21, 2010) (*citing Ewing*) ("although Ewing individually was not a party to the contract between the Barwick firm and the client, she was protected by the contract").

6. The Cohen Firm, the Saady Firm and Darken fully performed the work set forth in the Retention Agreement described above, including, without limitation, presentation of Mr. Vinca's FCA claims to the Government. Through Darken's, the Cohen Firm's and the Saady Firm's efforts, the Government was persuaded to and did intervene in the FCA case, even though the Government intervenes in only a small minority of FCA cases.

7. After the Vinca/Sweeney FCA case was filed, five other relators filed FCA cases against Advanced Biohealing/Shire.

8. In January 2017, the Government settled Vinca's FCA case as part of the largest

False Claims Act case settlement in the history of Middle District of Florida, and the largest medical device kickback FCA settlement in the history of the United States, with Defendant paying $350 million in damages ("Settlement").

9. Prior to and subsequent to the Settlement, the other five relators made conflicting claims and sought their own allocation percentages and sought to minimize Vinca's allocation share of the $350 million settlement.

10. After the Settlement, the Cohen Firm, the Saady Firm, and Darken were required to engage in substantial additional litigation over whether the Vinca/Sweeney claim was "first filed". They were also required to respond to and defend numerous motions filed by the other five relators. These litigation efforts resulted in a ruling from this Court dated November 20, 2017 (Doc 131) that contains a very favorable allocation to Mr. Vinca and his co-relator Sweeney. Mr. Vinca accepted the allocation awarded by this Court by choosing not to appeal this order.

11. This favorable ruling and two voluntary settlements with Relator Harvey, expressly agreed to and executed by Relators Vinca and Sweeney, have resulted in Relators Vinca/Sweeney receiving credit for an approximately 70 percent allocation of the $350 million FCA Settlement for purposes of determining their relator share award.

12. In a multi-relator FCA case, a relator's share award is determined by two components: (1) the percentage of the paid FCA settlement amount allocated to that particular relator, and (2) the 15-25 percent relator share award percentage (agreed to between the relator and the Department of Justice or else determined by the district court) applied to the portion of the settlement amount allocated to that particular relator. By January 2018, Relator Vinca had agreed to both of these components by accepting the Court's November 20, 2017 allocation ruling and then by agreeing to a 20 percent relator share award proposed by the Department of

Justice.[2] At that point, no further action by the district court was required for Relator Vinca to receive his relator share award.

13. By accepting the Court's November 20, 2017 allocation ruling and then by agreeing to the 20 percent relator share award proposed by the Department of Justice, Relator Vinca settled his FCA relator share claim by January 2018. Accordingly, the contingency in the Vinca Retention Agreement occurred no later than January 2018, long before Vinca's termination of the Cohen Firm, the Saady Firm, and Darken on March 21, 2018.[3] *King v. Nelson,* 362 So.2d 727, 728 (Fla. 2nd DCA 1978) (holding that first attorneys were entitled to full contingency amount where first attorneys negotiated a settlement and plaintiff accepted the settlement, "but prior to the disbursement of the funds [plaintiff] consulted with another attorney" and the first attorneys were discharged; "Mr. King had agreed to the $8000 settlement and it was subsequent to and not prior to his agreement to the settlement that he advised his first attorneys that he was discharging them"); *Cooper v. Ford & Sinclair, P.A.,* 888 So.2d 683, 690 (Fla. 4th DCA 2004) (holding that attorney was entitled to full contingency amount "because here there was no attempt to discharge Kelly's attorneys until after they negotiated the settlement offer. As the trial court correctly held, '[a]t the time of the settlement, the contract between [the

---

[2] Since terminating the Cohen Firm, the Saady Firm, and Darken, Relator Vinca has not attempted to attack the Court's November 20, 2017 allocation ruling; has not attempted to withdraw from or repudiate his sharing agreement with Relator Harvey; and has not attempted to withdraw his agreement to the 20 percent relator share award proposed by the Department of Justice. Relator Vinca's post-termination conduct demonstrates that he in fact settled his FCA relator share award claim prior to the termination of the Cohen Firm, Saady & Saxe, and Kevin J. Darken. *Eakin v. United Technology Corp.,* 998 F.Supp. 1422, 1431 (S.D. Fla. 1998) (holding that attorney was entitled to full contingency fee based in part on the fact that "[a]s of today, neither Eakin nor Defendant have repudiated their agreement in court or elsewhere").

[3] The Retention Agreement provides that "it is agreed that payment of the Attorneys' fees shall be in a lump sum payable at the time of the settlement unless otherwise agreed by the Clients and the Attorneys in writing." Given this contractual language and the fact that Vinca's relator share award claim was settled by January 2018, the Cohen Firm, Saady & Saxe, and Kevin J. Darken are entitled to the full contingency fee in the Retention Agreement. *Harrington v. Estate of Batchelor,* 924 So.2d 861, 862 (Fla. 3rd DCA 2006); *Town of Medley v. Kimball,* 358 So.2d 1145, 1147 (Fla. 3rd DCA 1978).

attorneys and the estate] was completed.'" The contingency requirement had been met and the attorneys were entitled to rely upon the provisions of the written contingency fee contract to determine the amount of their fee"); *Fields v. Klein,* 946 So.2d 119, 121 (Fla. 4th DCA 2007) ("It is clear that the contingency was not realized prior to Klein's discharge" because "[t]he case was not settled before Fields terminated Klein's services"), *citing Cooper.*

14. Following the district court's November 20, 2017 order, and their acceptance of the district court's allocation rulings, Relators Vinca and Sweeney also negotiated and reached an unusually favorable agreement with the Department of Justice for a relator share percentage of 20 percent.[4] Given the district court's November 20, 2017 relator allocation order and the later agreement in January 2018 with the Department of Justice for a 20 percent relator share, the Cohen Firm's, Saady & Saxe, P.A.'s, and Kevin J. Darken's work under the Retention Agreement has concluded and the contingency fee payment called for in the Retention Agreement and due the Cohen Firm, Saady & Saxe, and Kevin J. Darken became fully vested.

15. Attorney Barry Cohen also played a critical role in the strategy, negotiations, and arguments made to the Court and to the Department of Justice that resulted in the Vinca allocation and relator share percentage.

16. In addition, since the Retention Agreement specifically excluded work on any appeals, the work required by the Retention Agreement has been fully performed, Relator Vinca's case was concluded in the district court, and the Cohen Firm, Saady & Saxe, and Kevin J. Darken have earned the compensation promised and agreed to by Mr. Vinca.[5]

---

[4] On January 25, 2018, counsel for Relators Vinca and Sweeney informed the Court that Relators Vinca and Sweeney had reached an agreement with the Department of Justice as to their relator share percentage. (Doc.147)

[5] As the Eleventh Circuit has held, "[w]hether [Vinca] has grounds for a malpractice or negligence case in state court is irrelevant" to the validity of this charging lien and to the Cohen Firm's and Saady & Saxe's entitlement to be paid their full contingent fee under the Retention Agreement. *Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650, 653 (11th Cir. 1990).

17. In addition to pursuing Vinca's allocation of the $350 million settlement, the Cohen Firm, the Saady Firm and Darken successfully pursued and successfully settled Relator Vinca's individual False Claims Act retaliatory termination claim against Shire under 31 U.S.C. § 3730(h) in January 2017. Vinca consented to and approved this individual settlement and has received and retained the proceeds of this settlement and paid the contingency based legal fees owed on this recovery in accordance with the terms of the Retention Agreement.

18. On March 21, 2018, the Cohen Firm, Saady & Saxe, P.A. and Kevin J. Darken received written notice from attorneys purporting to represent Mr. Vinca that their services had been terminated immediately, notwithstanding the fact that the work under the Retention Agreement had already been fully performed and the contingency fee due thereunder was fully vested and had been earned. Mr. Vinca had previously approached Darken and threatened to terminate the Cohen Firm, the Saady Firm and Darken if they would not agree to reduce their contingent fee. It is clear that Vinca terminated the Cohen Firm, the Saady Firm and Darken to avoid paying the fees owed them under the Retention Agreement.

19. The termination was not consensual, was without cause, and was done after the work required by the Retention Agreement had been fully performed.

20. Given the above, the Cohen Firm, the Saady Firm and Darken are entitled to the charging liens identified in this Notice, and those liens are hereby filed so as to be recognized and rights thereunder enforced by this Court.

21. The Cohen Firm, the Saady Firm, and Darken request that this Court order that the full relator share due Vinca be deposited into the registry of this Court pending resolution by this Court of the charging liens. *See Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650, 652 (11th

Cir. 1990) (district court deposited proceeds of plaintiff's employment discrimination claim in court registry pending resolution of first attorney's charging lien).

22. This Court has jurisdiction over "the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit." *Bruton v. Carnival Corp.*, 916 F.Supp. 2d 1262, 1265 (S.D. Fla. 2012), *citing Zaklama*.

WHEREFORE, notice is given to all interested parties or affected parties and persons of Barry A. Cohen, P.A.'s, Saady & Saxe, P.A.'s, and Kevin J. Darken's charging liens in this case.

Dated: May 11, 2018

Respectfully Submitted,

Barry A. Cohen
Barry A. Cohen, P.A.
Fl Bar No.0096478
(813) 347-3391

/s/Claire Saady
Claire Saady, Esq.
Fl Bar No. 102954
Daniel L. Saxe., Esq.
Fl Bar No. 102962
SAADY & SAXE, P.A.
205 Crystal Grove Boulevard
Lutz, FL 33548
claire@saadyandsaxe.com
(813) 909-8855
(813) 909-8844 Fax

/s/ Kevin J. Darken
Kevin J. Darken
Fl Bar No. 090956
Kevin J. Darken Law Group, LLC
332 South Plant Avenue
Tampa, FL 33606
kdarken@kevindarken.com

(813) 513-4913
(813) 513-4948 Fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of May 2018, a true and correct copy of the foregoing *Notice Of Attorneys' Charging Liens By Barry A. Cohen, P.A., Saady & Saxe, P.A., And Kevin J. Darken* has been furnished by CM/ECF to all counsel of record; and by United States mail to Noel McDonell and Bryen Hill, Macfarlane, Ferguson & McMullen, One Tampa City Center, Suite 2000, 201 North Franklin Street, Tampa, FL 33602.

/s/ Kevin J. Darken
Kevin J. Darken