IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA, ex rel.
BRIAN VINCA and JENNIFER STAUP
SWEENEY,

    Plaintiff,

v.

    Case No.: 8:11-cv-176-T-30MAP

ADVANCED BIOHEALING, INC.,

    Defendant.

_____/

**RELATOR BRIAN VINCA'S MEMORANDUM ADDRESSING THIS COURT'S CONCERNS RELATED TO FORMER COUNSEL'S CHARGING LIEN, THE PENDING MOTION TO DISQUALIFY, AND MOTION TO SEAL**

    **NOW COMES** Relator, BRIAN VINCA (hereinafter referred to as "Vinca"), by and through his undersigned counsel, pursuant to this Court's direction at the August 21, 2019 Hearing, hereby provides his Memorandum Addressing this Court's Concerns Related to Former Counsel's Charging Lien [DE 167], the Pending Motion to Disqualify [DE 202], and Motion to Seal [DE 200], and states as follows:

**FACTUAL BACKGROUND**

    1.    On April 8, 2019 Barry A. Cohen, Esq., Kevin J. Darken, Esq., Barry A. Cohen, P.A., and Saady & Saxe, P.A. (collectively referred to as "Former Counsel") filed a Motion to Seal Exhibit 2 to Former Counsel's Motion to Disqualify Noel McDonell, Bryen Hill, and Macfarlane Ferguson (sic)[1] from the Charging Lien Litigation Pursuant to Fla. R. Jud. Admin. 2.420(c)(3)(B), Fla. R. Jud. Admin. 2.420(c)(7) and (c)(8), the Attorney Work Product

---

[1] The correct name of the undersigned's law firm is Macfarlane Ferguson & McMullen.

Doctrine, the Florida Mediation Privilege, and Local Rule 9.07(b) and Incorporated Memorandum of Law (hereinafter referred to as the "Motion to Seal"). [DE 200]

2. On April 11, 2019, Former Counsel filed an Amended Motion to Disqualify Noel McDonell, Bryen Hill, and the Macfarlane Ferguson (sic) Firm from Participating in the Charging Lien Litigation and to Bar Use of Barry A. Cohen, P.A. Emails Obtained Without Authorization and Provided to The Florida Bar (hereinafter referred to as the "Disqualification Motion"). [DE 202] [2]

3. On May 2, 2019, this Court scheduled a hearing on the Motion to Seal and Disqualification Motion to take place on May 13, 2019. [DE 212]

4. The May 13, 2019 hearing went forward as scheduled by the Court. Subsequently, the Clerk filed minutes of the hearing, directing that "[t]he parties have 21 days to further brief, along with the appropriate response time, the issue of why the Court should consider Motions #200 and #202 as relevant to the charging lien." [DE 220].

5. On May 20, 2019, this Court entered an Order on Joint Motion for Release of Funds in Court Registry. [DE 229] Former Counsel were not counsel of record at the time of the release of funds.[3] The funds at issue in this matter were released to the undersigned, as counsel for Vinca.

6. On May 24, 2019, Vinca filed his Motion for Clarification and Judicial Notice. [DE 231] As a result, a follow-up hearing on this issue was scheduled for August 21, 2019.

---

[2] This Court has already found the Disqualification Motion to be moot. Judge Moody ruled on April 12, 2019, well after the Charging Lien had been filed. (DE 203).

[3] The language in the "Contract for Legal Representation" at issue before this Court provides that "[i]n the event that the CLIENTS terminate the LAW FIRM after more than three business days elapse after execution of this agreement, then Clients understand and agree that the attorneys may have a lien or claim for all costs and expenses expended pursuant to this agreement and may have a claim for *quantum merit* (sic) attorneys' fees for services provided under the agreement." The language of the contract itself does not entitle Former Counsel to a claim of lien on the proceeds received by Vinca; only a lien on "all costs and expenses expended" which have already been recouped.

7. The August 21, 2019 hearing went forward as scheduled by the Court. Subsequently, the Clerk filed minutes of the hearing, directing that "the Court directs the parties to file briefs as to whether the Court should consider the [F]ormer [C]ounsel's alleged conduct after the award." [DE 250]

8. As explained below, Vinca agrees with the Court that the Motion to Seal and Disqualification Motion are moot and otherwise not relevant to the lien litigation. However, Former Counsel's alleged conduct against Vinca's interest after the December 2016 plea agreement between the Department of Justice ("DOJ") and Shire Degenerative Medicine, Inc. ("Shire") is relevant for purposes of determining whether Former Counsel is entitled to a fee award under a theory of *quantum meruit* (a theory which has not affirmatively been pleaded by any party to date), and if so, the amount of said award.

9. Accordingly, it does appear necessary that this Court conduct an evidentiary hearing to determine if any fees should be awarded to Former Counsel under the principals of *quantum meruit*.

10. Vinca hereby provides his memorandum in response to this Court's inquiry as set forth below.

## MEMORANDUM OF LAW

I. **This Court must examine conduct of Former Counsel after the December 2016 plea agreement between the Department of Justice and Shire to determine the proper value of Former Counsel's *quantum meruit* claim, if any, and resulting damages to Vinca.**

As stated before this Court on August 21, 2019, Vinca agrees with this Court that the issues related to legal malpractice are properly before the State Court in the matter currently pending in Hillsborough County, Florida, styled: *Brian Vinca vs. The Estate of Barry A. Cohen; Barry A. Cohen, P.A., Cohen; Foster & Romine, LLC; The Barry A. Cohen Legal Team; Claire*

*Saady; Saady & Saxe, P.A.; Kevin Darken; The Kevin J. Darken Law Group, LLC*, Case No.18-CA-0079365 (hereinafter referred to as the "Malpractice Action").

The Charging Lien [DE 167] is a matter that only involves Barry A. Cohen, P.A.'s claim to a portion of the money which was ultimately awarded to Vinca pursuant to his whistleblower acts in the underlying *qui tam* action.[4] Barry A. Cohen, P.A.'s[5] claim of entitlement to fees is actually a contract claim based upon the original Contract for Legal Representation entered into between Vinca and the Barry A. Cohen, P.A. firm. As such, this matter should be treated as an action by Barry A. Cohen, P.A. to enforce its limited rights pursuant to a contract. This contract dispute is governed by Florida substantive law alongside federal procedural law. *Horowitch v. Diamond Aircraft Industries, Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co v. Tompkins*, 304 U.S. 64 (1938); *Burger King Corp v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1313 n.9 (11th Cir. 2009)).

On August 21, 2019, this Court specifically asked counsel for all parties to draft a memorandum directed towards the following issue:

> [S]hould this court consider other matters rising to the level of even, as alleged, unclean hands in considering the charging lien[?]

(Aug. 21, 2019 Hrg. Trans. p. 30).

The Court again reiterated the question to be briefed by the parties:

> As I see it, in the circumstances where a[n award] by former counsel has been negotiated and no other counsel was retained up through [the award], what conduct must the Court look at former counsel post settlement to make a determination of a charging lien[?]

---

[4] It is important to note that Vinca's cooperation in the Advanced Biohealing *qui tam* case include not only being first-to-file his (bare bones) sealed complaint, but also that Vinca is the sole relator who proactively and affirmatively cooperated with the DOJ, including wearing a wire to transact with conspiring defendants who were ultimately prosecuted by the DOJ. It was the acts and efforts of Vinca, and not his Former Counsel, which almost single-handedly provided the direct evidence necessary to prove that defendant's *mens rea* and thus it was Vinca who gave the DOJ the proof necessary to establish the direct liability of physicians which led to adjudication.
[5] And, theoretically, Saady & Saxe, P.A.'s.

(Aug 21, 2019 Hrg. Trans. p. 32.).

The answer to the question posed by the Court is straight forward: yes, the Court should look at the conduct of Former Counsel post-allocation order, that order issued by Judge on November 20, 2017 (the "Allocation Order"). As this Court recognized:

> [T]here is for my consideration in the theory of, to use Ms. McDonell's argument, unclean hands or even another standard of bad faith, if there is such conduct by counsel, former counsel, which resulted then in the client having to obtain new counsel, that is resulting damages, which is part of the Court's consideration as to what award should be given, if any. And so, I don't know what these documents say. But if the position is that they draw light on that, then they are going to be relevant for the Court's consideration.

(Aug. 21 Hrg. Trans. p. 25).

Florida case law is unwavering on this issue, "[a] lawyer engaging in a clear serious violation of duty to a client may forfeit some or all of the lawyer's compensation for the matter." *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So. 2d 947 (Fla. 4th DCA 1993). The *Scheller* court further noted that "[o]ne of the justifications for forfeiture is that it is sometimes difficult to ascertain the harm a lawyer's misconduct may have caused. The harm may be intangible, such as the client's loss of trust in the lawyer's loyalty and good faith." *Id.* As such "[a]n extraordinary remedy like fee forfeiture should be considered only when an ordinary remedy like offsetting damages is plainly inadequate." *Id.* at 953. "If the client's damages exceed the *quantum meruit* fee, then that should end the matter. The fee would not then be forfeited but rather offset against the attorney's obligation to the client." *Id.* at 955.

This is not only the law in Florida; other jurisdictions have likewise held that "[a] lawyer's improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge, and 'a tribunal will also consider misconduct more broadly, as evidence of the lawyer's lack of competence and loyalty, and hence the value of the lawyer's services.'" *Exact Software v. Infocon*

*Systems, Inc.*, No. 3:03CV7183, 2011 WL 2490594, at *6 (W.D. Ohio June 22, 2011). To be clear on this matter, the *Exact Software* court held that "misconduct allegations are relevant to determining the quality of [the prior counsel's] services. Those allegations may lead to a reduction in an award or even provide an affirmative defense to [the *quantum meruit*] claims." *Id.*

Just as in *Scheller* and *Exact Software*, Former Counsel's misconduct and violations of duty towards Vinca are entirely relevant to this Court's determination as to the value of Former Counsel's services, and, as such, must be considered by the Court in relation to Former Counsel's Charging Lien.

This logic applies not only to Former Counsel's conduct after Judge Moody's Allocation Order, but dates back as far as the date of the initial settlement between the DOJ and Shire in December 2016. As argued at the August 21, 2019 hearing:

> The avaricious behavior [of Former Counsel] occurred once the windfall was worked out between the [DOJ] and [Shire]. And that's why where the evidence is so compelling. And that's why it's not malpractice. It's bad faith . . . We're talking about the inherent conspiracy between counsel, once they knew they had a windfall, how they could get more of it and keep it away from [Vinca] by misrepresentations, by organization between them that was to the detriment of [Vinca].

(Aug. 21, 2019 Hrg. Trans. p. 24).

The undersigned agrees with the Court that any conduct prior to the December 2016 plea agreement between the DOJ and Shire is not substantive evidence of the issue as framed by this Court; those elements of negligence and not of malfeasance are better addressed substantively in the State Court. However, all conduct of Former Counsel post-December 2016 is direct evidence to the issue of entitlement and therefore relevant to the instant lien litigation.

As the contingent event in this case did not occur prior to Former Counsel's termination, the only claim that Former Counsel could make—although it has not expressly done so to date—is one under a theory of *quantum meruit*. *Quantum meruit* is an equitable remedy, which logically

6

permits Vinca to assert equitable defenses to such claim. One such equitable defense is unclean hands. *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 165 F.Supp.3d 1256, 1273 (S.D. Fla. Feb. 22, 2016) (quoting *Keystone Driller Co. v. Gen Excavator Co.*, 290 U.S. 240, 241 (1933)) ("He who comes into equity must come with clean hands"). "Indeed, '[i]t is a self-imposed ordinance that closes the door . . . to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" *Id.*

In order for Vinca to prevail on his affirmative defense of unclean hands, he must show that (1) "the plaintiff's wrongdoing is directly related to the claim," and (2) that "the defendant was personally injured by the wrongdoing." *USA Nutraceuticals*, 165 F.Supp.3d at 1273 (citing *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015)). As stated at the August 21, 2019 hearing, Vinca intends to introduce substantive evidence that Former Counsel, upon learning of a plea agreement between the DOJ and Shire in December 2016, conspired amongst themselves in order to maximize their recovery of attorneys' fees to the detriment of Vinca (beyond that which had been negotiated in the original "Contract for Legal Representation"). These nefarious acts include, but are not limited to, illegal fee splitting as well as pressuring Vinca to obtain a "loan" at a usurious rate to give Former Counsel as a condition requisite to continuing representation of Vinca, all while asserting a right to the yet-unvested, undivided, and unliquidated Relator award. Without going into great detail at this juncture, the timing of the "loan" request (and the source) is quite telling, given that the law office of Barry A. Cohen, P.A. then shuttered its doors within weeks of Former Counsel's "loan" demand, and—by all accounts—Barry A. Cohen, P.A. was already utterly financially insolvent and in the massive debt of approximately $50 million to lienholder Counsel Financial Services.

As a significant point of clarification, the undersigned believes that there might be some confusion as to those documents to which the undersigned was referring to at the August 21, 2019 hearing. While the undersigned has previously provided ninety-nine (99) pages of documents to Judge Huey which were sequestered in the Malpractice Action, the undersigned does not seek to present these secured documents to this Court at this juncture. Instead, the documents upon which the undersigned intends to rely in order to demonstrate Former Counsel's ongoing dereliction of duty are limited to those published documents which are contained within The Florida Bar complaint which was filed against Domenic Massari on September 11, 2018. In addition, Vinca will sponsor evidence already in Vinca's own possession as well as limited testimony related to those documents and the topics contained therein. As suggested at the prior hearing, the undersigned also has no objection to an *in camera* review of the documents at issue.

Pursuant to *USA Nutraceuticals*, Vinca reserves his right to raise at hearing appropriate equitable defenses and counterclaims, including, but not limited to, unclean hands, and to present extensive evidence to this Court of Former Counsel's bad acts which were to Vinca's detriment and which occurred following the initial-- and procedurally preliminary-- December 2016 plea agreement reached between the DOJ and Shire in this matter.[6]

## II.     This Court should not just look at the matter of going forward from Judge Moody's Allocation Order as to the issue of damages.

Former Counsel has the burden of establishing that the contingent event occurred which entitles them to a full contingency fee. Former Counsel is unable to overcome this burden. Specifically, this burden cannot be met because the relators had not reached settlement, recovered proceeds, nor had judgment been entered before the undersigned assumed

---

[6] Prior to a final decision establishing any relator's share; a decision which has not yet been actually adjudicated by any Court.

representation of Vinca. Florida law is clear that an "attorney's charging lien 'attaches to the proceeds of the judgment or settlement or to any funds recovered by an attorney for this client.'" *Buckley Towers Condo. Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2012 WL 573784, at *8 (reversed on other grounds). *Buckley Towers* makes it clear that counsel representing the client at the time of final judgment is counsel of record for the contingent event. The key factor for the court to consider is when "the proceeds of the judgment actually came into being." *Id.* at *9. In this matter, no final order has been entered to date. It was not until May 20, 2019—over one (1) year after Former Counsel was terminated—that this Court entered an Order on Joint Motion for Release of Funds in Court Registry [DE 229] which causes the proceeds of the settlement to actually be "recovered."

Former Counsel initially argued that Judge Moody's November 20, 2017 Allocation Order [DE 131] was the contingent event. However, the DOJ aptly and succinctly rebuts this assertion in its March 13, 2018 response to the jurisdictional question posed by the Eleventh Circuit on February 27, 2018, stating as follows:

> This Court lacks appellate jurisdiction over any challenges to the district court's allocation of the settlement proceeds to the claims asserted by the six relators because the court has not yet issued a final decision establishing any relator's share of their respective allocation (if any) under 31 U.S.C. § 3730(d)(1). As the district court stated, it would "rule on what portions of the $350 million dollar settlement between the Government and Shire should be attributed to the Relator's claims, which were filed in six separate civil actions," but, "[notably, the Court's ruling does not determine the exact amount of the Relators' share." Allocation Order[7] at 2. The court instead reserved jurisdiction to conduct post-judgment[8] relator-share proceedings in the six actions individually. *Id.* at 17-18; see Dismissal Order[9] at 3. **While the**

---

[7] The DOJ initially defined Judge Moody's November 20, 2017, Order [DE 131] as the "Allocation Order."
[8] "Post-judgment" in this matter refers to the six civil lawsuits filed against Shire; no judgment was entered in relation to the relator-share proceedings.
[9] Judge Moody's December 5, 2017 Order of Dismissal [DE 140] is defined as the "Dismissal Order."

9

> allocation decision was a necessary, intermediate order entered for the sole purpose of aiding those post-judgment proceedings, that order is not final because it did not "end[] the litigation" on each relator's share. *Gelboim*, 135 S. Ct. at 902[10]; *see Mayer*, 672 F.3d at 1224[11] (treating order resolving primary action "as the first rather than the last order in the case" with respect to attorney's fees); *see also* Allocation Clarification Order; Allocation Order; Allocation Briefing Order. (Emphasis added)

### III. Former Counsel also testified and argued that the contingent event did not occur prior to termination and, as such, they are estopped from now seeking to argue otherwise before this Court.

Tellingly, the only time that Former Counsel takes the position that the contingent event has occurred has been before this Court related to the instant lien. In several pleadings and depositions taken in other matters, Former Counsel makes a much different argument. To Former Counsel, the matter of contingency is a situational moving target based upon the convenience of the controversy at issue, notwithstanding the maxim of judicial estoppel. The following is a summary of pleadings filed by Former Counsel in other related matters that directly indicate that the instant lawsuit was not over and, as such, no contingent event had occurred:

Pleadings

| *Date* | *Document Title* | *Argument by Former Counsel* |
|---|---|---|
| 10/01/18 | Defendants' Saady & Saxe, P.A. and Claire Saady's Motion for a Stay and Abatement[12] | Defendants moved for a "full Stay and Abatement of this entire case **pending completion and/or Final Judgment in the** |

---

[10] *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015).
[11] *Mayer v. Wall Street Equity Group, Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012).
[12] This motion was filed in the State Malpractice Action. A nearly identical motion was filed on behalf of Defendants Barry A. Cohen, Barry A. Cohen, P.A., Cohen, Foster & Romine, LLC, The Barry A. Cohen Legal Team, Kevin Darken and the Kevin J. Darken Law Group, LLC, by Kevin Darken, Esq., making the same allegations. As such, they will not be duplicated here, but it is critical to note that all Former Counsel have identically and affirmatively pleaded the completely opposite position to the matter *sui juri*s on the issue of contingency. Additionally, counsel for the Receiver in this matter, Pedro Bajo, stated at the August 21, 2019 hearing that the Receiver's "position is completely aligned with [Darken] with respect to the MacFarlane Ferguson/Vinca [sic] claims . . .So, you know, at this point the pleadings that I have reviewed, we would adopt the positions that Mr. Darken has already espoused in those pleadings." (Aug. 21, 2019 Hrg.Trans. pp. 11-12.)

10

| *Date* | *Document Title* | *Argument by Former Counsel* |
|---|---|---|
| | | **federal lawsuit** that form the basis of [Vinca's] Amended Complaint." (Emphasis added)<br><br>"It is not disputed that the Federal Case, including the appeals to the Eleventh Circuit Court of Appeals, is still proceeding." ¶5<br><br>"[T]he allegations of [Vinca's] own Complaint confirm that the underlying Federal Case is not "final", a result that mandates that the instant lawsuit, including all discovery, must be stayed and abated against Cohen and Darken until such time as the Federal Case is complete by way of final judgment or settlement." ¶6<br><br>"The above facts reflect a Federal Case whish (sic) is manifestly not 'final.'" ¶12<br><br>Defendants argue that "Vinca has not suffered redressable harm because no final judgment has been rendered in the underlying Shire relator share allocation litigation." |
| 10/25/18 | Defendants' Saady & Saxe, P.A. and Claire Saady's Opposition to Plaintiff's Motion to Compel[13] | "Florida law is crystal clear that in litigation malpractice actions such as the instant case, the underlying case complained of must be final, that is, have proceeded to a final judgment, before the litigation malpractice action may proceed." ¶2<br><br>"It is not disputed that the Federal Case, including three appeals to the Eleventh Circuit Court of Appeals, is still proceeding." ¶6<br><br>"[A] client's claims to do not arise until the underlying case is resolved, and that those claims must be fully resolved before the second case may move forward." ¶12<br><br>"Since the Federal Lawsuit is indisputably still pending, it is not 'final.'" ¶15 |

---

[13] See fn. 6.

11

| *Date* | *Document Title* | *Argument by Former Counsel* |
|---|---|---|
| | | "All Plaintiff's claims against the S&S Defendants are for litigation malpractice, and they must wait, including discovery, until the Federal Lawsuit if (sic) final." ¶25 |
| 01/17/19 | Defendants' Saady & Saxe, P.A., and Claire Saady's Amended Motion for a Stay and Abatement of Plaintiff's Amended Complaint[14] | Defendants moved for a "full Stay and Abatement of this entire case **pending completion and/or Final Judgment in the federal lawsuit** that form the basis of [Vinca's] Amended Complaint." (Emphasis added) |

Argument Made at Malpractice Action Hearing by Former Counsel Before Judge Huey

| *Date* | *Argument by Former Counsel to Judge Huey in Malpractice Action* |
|---|---|
| 02/26/19 | Argument by Mr. Darken:<br>"Our position is that under Florida law malpractice counts are not ripe until the underlying false claims act case is resolved . . . **We say there's not a settlement**. There's going to be a mini mediation of that in front of Magistrate Sansone on March 12th. Depending on what happens – either there will be a settlement recommended to Judge Moody which, you know, we may object to if we lose that. Or if Judge Moody finds there is no settlement the case will go back to the 11th Circuit for a final round of briefing and a ruling." (Feb. 26, 2019, Hrng Trans. pp 21-22) (Emphasis added) |

Testimony[15]

*Deposition of Kevin J. Darken taken June 25, 2019 by Greg Brown* [Exhibit 1]:

| *Page* | *Testimony* | |
|---|---|---|
| 15-17 | Q: | On page 5, paragraph 3 [of the charging lien] begins, "By accepting the Court's November 20, 2017 allocation ruling and then by agreeing the 20 percent relator share award proposed by the Department of Justice, Relator Vinca settled his FCA relator share claim by January 2018. Accordingly, the contingency in the Vinca retention agreement occurred no later than January 2018, long before Vinca's termination of the Cohen firm, the Saady firm, and Darken on March 21, 2018." Do you see that? |
| | A: | Yes. |
| | Q: | Is that language you drafted? |
| | A: | Yes. |

---

[14] See fn. 6.
[15] Both of these depositions were taken by either Counsel Financial Services, LLC, or Kevin Darken in the Writ of Garnishment Action before Judge Nielsen that resulted in a Receiver being appointed for Barry A. Cohen, P.A. Undersigned counsel was barred from attending the depositions as Darken refused to testify in the presence of the undersigned.

| *Page* | *Testimony* | |
|---|---|---|
| | Q: | Was it a truthful statement? |
| | A: | It's a litigation position. It's the position that we took. It is the position that is contested by Vinca and McDonnell [sic]. It's an open question. I cited the cases that are cited here. There are other Florida cases, and this is a question of Florida law that indicate that the contingency doesn't occur until the client is actually paid, which obviously did not happen in this case before we were fired in March of 2018. So this was our litigation position. I believe it is supportable by the case law that we pled. On the other hand, it is certainly an uncertain question of law. It has not been ruled on by the district court. |
| | Q: | Did you believe it to be legally and factually accurate at the time you made this statement and filed it in the charging lien as of May 15, 2018? |
| | A: | I believe it was a claim that I could make reasonably based on the facts and the law. |
| | Q: | Is there anything that's happened in the time since May 15, of 2018 that would cause you to retract the statements made here? |
| | A: | I wouldn't retract them. **You know, I've seen Vinca's counsel filed two responses to this charging lien, however they are titled. And, you know, and I've done my own research as well, and so I'm aware of a significant number of Florida cases that say the contingency does not occur until the client's paid**. On the other hand, you know, we have the cases that we cited.<br>(Emphasis added) |

| 24 -<br>25 | Q: | What was the purpose of you sending that email? |
|---|---|---|
| | A: | . . . I had real concerns about whether or not Judge Moody's allocation was a final order. And although we argued that it was, the government argued that it was not and as well as two of the appealing relators argued it was not. **And I, in my own mind, thought probably it wasn't because Judge Moody, the final order, according to the case law, is supposed to be where the district court doesn't have to do anything more**. But Judge – the Relators 3, 4, 5 and 6 could not be paid even If Judge Moody's allocation order was upheld on appeal because they had not negotiated a relator share agreement with the government and **Judge Moody had not done a relator share award determination**. So I thought there was a very high risk of the Court of Appeals sending it back, then having Judge Moody to, at the least, do the relator share awards for 3, 4, 5, and 6 and then having it re-appealed.<br>(Emphasis added) |

| 39 | Q: | Didn't you also need Barry Cohen to sign the addendum? |
|---|---|---|
| | A: | Well, to get this deal, yes. On the other hand, **I could've taken Jennifer Sweeney myself, and Jennifer Sweeney was not going anywhere else. I've represented her for seven years. She wasn't going to some lawyer that Counsel picked out, and then I would have had the contingency, and Counsel would be – I would be battling Counsel for, you know, what is their quantum meruit**. So you know – |

13

| Page | Testimony |
|---|---|
|  | Q:  And that is assuming that the contingency hadn't already occurred; correct?<br>A:  Correct.<br>(Emphasis added) |

*Deposition of Joseph Kasouf[16] taken July 19, 2019 by Kevin Darken* [Exhibit 2]:

| Page | Testimony |
|---|---|
| 64 | Q.  What's your recollection of what you said and I said at the June 16 [2018] meeting?<br><br>\*   \*   \*   \*   \*   \*   \*   \*   \*<br><br>A.  My recollection of your comments was that this was basically a zero value case and has no value, because I would ask you what's the value fee procedural status, that's what we have done for years. The procedural status was that it was on appeal because of the first to file issue, the six relators, and this could be a zero case and that's pretty much it. |
| 133 | Cross-Examination by Greg Brown<br><br>Q:  Did Mr. Darken indicate to you during your meeting in June [of 2018] that he had a belief that the contingency under the original client to Cohen retention agreement had already occurred?<br>A:  No |

Based upon the foregoing, Former Counsel have acknowledged that the contingent event cannot be deemed to have occurred prior to Former Counsel's discharge in this matter. When beneficial to their claims, Former Counsel themselves acknowledge this in their pleadings and testimony and, as such, Former Counsel should be estopped from otherwise arguing that the contingent event occurred prior to the termination of Former Counsel.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* (citing 18 Moore's Federal Practice § 134.30, p. 134–62 (3d

---

[16] Mr. Kasouf is in-house counsel for Counsel Financial Services who would frequently discuss cases with Kevin Darken and Domenic Massari.

ed. 2000). In two separate actions, Former Counsel has asserted that the contingent event did not occur prior to termination, to wit:

1. In the Malpractice Action, Former Counsel maintained from the outset that the Federal *qui tam* case was not concluded and, as such, the Malpractice Action must be stayed and/or abated; and

2. In the Writ of Garnishment Action, Former Counsel maintained from inception that the contingent event did not occur prior to termination, as to do so would preclude Kevin Darken from entitlement in collecting any attorney's fees.[17]

Now, Former Counsel hopes to again change course and assert in the matter *sui juris* that the contingent event did occur, purely because this position is in their best interest at this time (and apparently overlooking Former Counsel's own unequivocal denial that the contingent event had occurred prior to termination, as evidenced by the depositions of Darken and Kasouf).

Because all parties have repeatedly acknowledged that the contingent event did not occur prior to Former Counsel's termination, the appropriate inquiry for this Court going forward on the issue of whether Former Counsel is entitled to a portion of Vinca's award must lie in *quantum meruit*.[18] This requires the Court to conduct an evidentiary hearing wherein Former Counsel will be provided the opportunity to present evidence in support of their claim, and current counsel will have the opportunity to rebut that evidence. This inquiry cannot, as

---

[17] Co-Relator Sweeney never signed a new representation agreement with Darken as required by Florida Bar Rule 4-1.5(f)(2), and the "addendum" to the Cohen, Jayson and Foster contract which Darken sponsors as his sole basis for entitlement to fees was actually signed long after Vinca terminated Former Counsel and hired the undersigned, and thus, after the putative contingent event. Curiously, neither Co-Relator Sweeney or Vinca ever signed a subsequent representation agreement with the Barry A. Cohen P.A. law firm (both relators actually hired the firm of Cohen, Jayson & Foster, P.A.). At no time was Vinca (or Sweeney) properly advised of client rights upon the disintegration of that firm, the firm they contracted with, also in violation of the Rule. *Id.* Neither relator ever signed a representation agreement with Kevin Darken, P.A., at any time.

[18] As stated throughout this memorandum, Former Counsel did not make a claim for *quantum meruit* in the original filing of its Charging Lien. [DE 167] To-date, no such claim has been made.

a matter of law, be limited to looking forward from Judge Moody's November 20, 2017 Allocation Order as a *quantum meruit* inquiry requires the Court to evaluate the "totality of the circumstances surrounding the professional relationship." *Rosenberg v. Levin*, 409 So. 2d 1016, 1022 (Fla. 1982). This necessarily entails a review of much more than just the amount of time or hours spent representing Vinca. *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 368-369 (Fla. 1995). The *Poletz* Court held that:

> Application of the factors set forth in Rule Regulating the Florida Bar 4–1.5(b), may provide a good starting point. However, because the factors relevant to the determination of the reasonable value of services rendered will vary from case to case, the court is not limited to consideration of the *Rowe* factors. The court must consider any other factors surrounding the professional relationship that would assist the court in fashioning an award that is fair to both the attorney and client. For example, the fee agreement itself, the reason the attorney was discharged, actions taken by the attorney or client before or after discharge, and the benefit actually conferred on the client may be relevant to that determination. The determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount to be awarded are matters within the sound discretion of the trial court.

This necessarily entails a review of the entire relationship between Former Counsel and Vinca.

VI. **The following procedural guide would assist the Court and all parties in resolving Former Counsel's Charging Lien**.

First and foremost, the mere filing of a "Charging Lien" does not frame the issues before this Court. As such, Former Counsel must first file a pleading asserting their claim(s) as well as the basis for said claim(s) in order to frame the issues. *See* Fed. R. Civ. P. 2 and 3; Local Rule 3.01(a) requiring that, "[i]n a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request."[19]

---

[19] Former Counsel's Notice of Lien does not identify any relief sought and, as such, it would be improper for this Court to award any relief absent the appropriate motion and/or pleading and subsequent hearing.

Second, and logically flowing from the filing of a pleading, Vinca would be entitled to file affirmative defenses to Former Counsel's claim of lien. *See* Fed. R. Civ. P. 8 and Local Rule 3.01(b).

Third, limited discovery should be permitted on the issues set forth in Former Counsel's claim and Vinca's affirmative defenses as asserted above. This discovery will necessarily include discovery into the factors set forth in *Rosenberg* relating to the "totality of the circumstances surrounding the professional relationship." *Rosenberg*, 409 So. 2d at 1022.

Finally, upon completion of this limited discovery, the Court should conduct an evidentiary hearing and issue a written order setting forth its report and recommendation pursuant to Fed. R. Civ. P. 72.

## V.     Conclusion.

This Court should consider the actions of Former Counsel following the December 2016 settlement between the DOJ and Shire in determining what amount, if any, Former Counsel should receive pursuant to their Charging Lien. The Court must conduct an evidentiary hearing related to Former Counsel's attorneys' fee award, if any, under a theory of *quantum meruit* and, in order to conduct this evidentiary hearing, Former Counsel must frame the issues before the Court and limited discovery must be completed.

RESPECTFULLY SUBMITTED,

*/s/ Noel P. McDonell*
Noel P. McDonell, Esquire
Fla Bar No. 0899232
Bryen N. Hill, Esquire
Fla. Bar No.: 0095993
MACFARLANE FERGUSON & MCMULLEN
Post Office Box 1531, Tampa, Florida 33601
Telephone: (813) 273-4200
Facsimile: (813) 273-4396
Attorneys for Relator Brian Vinca

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished on this 4th day of October, 2019, via the U.S. District Court, Middle District Court of Florida's CM/ECF Portal to the following:

Christopher P. Tuite
US Attorney's Office - FLM
400 N Tampa St., Suite 3200
Tampa, FL 33602-4798

Lacy R. Harwell, Jr.
US Attorney's Office - FLM
400 N Tampa St., Suite 3200
Tampa, FL 33602-4798

Richard S. Nicholson
U.S. Department of Justice, Civil Division
Ben Franklin Station, P.O. Box 261
Washington, DC 20044

Sean P. Keefe
US Attorney's Office - FLM
400 N Tampa St., Suite 3200
Tampa, FL 33602-4798

Barry A. Cohen
The Barry A. Cohen Legal Team
201 E Kennedy Blvd Ste 1950
Tampa, FL 33602-5865

Kevin J. Darken
The Barry A. Cohen Legal Team
201 E Kennedy Blvd Ste 1950
Tampa, FL 33602-5865

Michael C. Addison
Addison Law Office, P.A.
1304 Alicia Ave
Tampa, FL 33604-6406

Germain Law Group, PA
Suite K
3412 W Bay to Bay Blvd
Tampa, FL 33629

Ray M. Thompson
H Brody, PA
3712 S Lockwood Ridge Rd
Sarasota, FL 34239

Trevor W. Howell
Howell Law Firm
701 Broadway Ste 401, Box 17
Nashville, TN 37203

Silvija A. Strikis
Kellogg Hansen Todd Figel & Frederick, PLLC
1615 M St NW Ste 400
Washington, DC 20036-3215

Victor Stephen Cohen
Bajo Cuva Cohen Turkel, PA
100 N Tampa St Ste 1900
Tampa, FL 33602-5853

Jason Kyle Whittemore
Wagner, Vaughan & McLaughlin, PA
601 Bayshore Blvd., Suite 910
Tampa, FL 33606

Jonathan K. Tycko
Tycko & Zavareel, LLP
1828 L Street N.W., Suite 1000
Washington, DC 20036

           */s/ Noel P. McDonell*
           **Attorney**