UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
ex. rel. BRIAN VINCA and
JENNIFER SWEENEY,

        Plaintiff,                Case No.: 8:11-cv-00176-JSM-AEP

v.

ADVANCED BIOHEALING, INC.,

        Defendant.

_____/

## RECEIVER'S MOTION TO ADJUDICATE AND ENFORCE
## BARRY A. COHEN P.A.'S CHARGING LIEN AGAINST VINCA

Steven S. Oscher, Receiver for Barry A. Cohen, P.A. (the "Cohen Firm"), files this motion to enforce the charging lien filed against the proceeds that Relator, Brian Vinca, recovered in this matter for professional services rendered and costs advanced by the Cohen Firm. (Dkt. 167, the "Charging Lien").

## FACTUAL BACKGROUND

On January 12, 2011, Relator Brain Vinca ("Vinca"), together with Relator Jennifer Sweeney ("Sweeney"), entered into a contract for legal representation with the law firm now known as Barry Cohen, P.A. (the "Contingency Agreement," attached hereto as **Exhibit 1**). The Contingency Agreement defined the scope representation as follows:

> The representation contemplated under this agreement includes presentation of the clients' claims to state and federal governments and the filing of necessary qui tam actions on the clients' behalf. Further, the representation contemplated under this agreement includes both the pursuit of the qui tam actions in the event state and/or federal government agencies elect to intervene and pursue the Claims and also if the state and/or federal government agencies elect not to intervene and pursue the Claims. However, the representation contemplated under this agreement ***does not***

1

*include any other legal proceedings or claims that may arise, including any*
*appeals* or original proceedings in appellate courts that result or arise from the
Claims.

(Ex. 1, p. 1) (emphasis added). The Cohen Firm thus represented Vinca in the instant qui tam

action, which was settled by the U.S. Government in January 2017 along with five other qui tam

cases against Advanced Biohealing, Inc. ("Shire").[1]  The six cases against Shire were settled for

$345 million (the "Shire Settlement"), but the Shire Settlement did not allocate how the proceeds

were to be divided between the six cases. On May 22, 2017, the Department of Justice ("DOJ")

sent a letter to counsel for the six relators in the settled qui tam cases proposing allocation of the

settlement. The Vinca/Sweeney Complaint was apportioned 55.155% of the settlement proceeds,

the largest allocation proposed for any of the six cases.

On November 20, 2017, Judge Moody consolidated the six qui tam complaints to resolve

the issue of the proper allocation of the Shire Settlement among the six cases (the "Allocation

Order," Dkt. 131). Judge Moody found the DOJ's proposed allocation was supported under the

facts and applicable law and for the reasons explained in the Allocation Order, allocated 55.155%

of the settlement proceeds to the Vinca/Sweeney Complaint. (*Id.*). Notably, the Court pointed out

that "no Relator can dispute that the Government and Shire are the only parties with actual

knowledge of the factors that led to the Shire settlement." (Dkt. 131, p. 7). Judge Moody accepted

the DOJ's view that the kickback claim asserted in the Vinca/Sweeney Complaint was the

"predominant driver of the settlement with Shire," as further support for adopting the 55.155%

allocation. The Court then found the other relators' complaints raised claims that varied from the

Vinca/Sweeney claims, thus entitling the other complaints to a smaller percentage of the Shire

---

[1] Some of the qui tam actions were filed against Advanced Biohealing, whereas others were filed against Shire
Regenerative Medicine, Inc. The two companies merged in 2011 and are therefore referred to collectively as "Shire."

{BC00270420:1}

Settlement. (*Id.* at pp. 12-14). After establishing the total percentages allocated to each of the six cases, the Court concluded by directing the government and the relators to proceed to resolve the remaining issue of the exact amount of the relators' individual shares in each of the six cases.

On January 19, 2018, DOJ Trial Attorney Richard Nicholson emailed counsel for the relators recommending exact amounts for each relators' share. (DOJ Email, attached hereto as **Exhibit 2**).  Relators Vinca and Sweeney were offered a combined 20% share of the federal settlement proceeds allocated to the Vinca/Sweeney Complaint by the Allocation Order, totaling $38,114,662. Vinca and Sweeney agreed to accept the combined 20% share.[2] *Id.* Accordingly, as of January 19, 2018, Relator Vinca was individually entitled to receive $19,057,225 in damages.[3]

The Allocation Order was subsequently appealed by various relators challenging the allocations. On February 21, 2018, the qui tam cases were stayed pending the outcome of the appeals. (Dkt. 156). Shortly thereafter, in March 2018, Vinca terminated the Cohen Firm and hired the law firm of MacFarlane Ferguson & McMullen, P.A. ("MacFarlane Ferguson") as his new counsel. (Dkts. 162-162). Then, the relators entered into a Settlement Agreement Concerning Relators' Shares, whereby the relators settled their appeals and agreed to allocation amounts (the "Allocation Settlement"). Under the Allocation Settlement, Vinca agreed to receive $10,725,000 plus 12.41% accrued interest (totaling $10,950,563.49 as indicated at Dkt. 239), with another $7,150,000 plus 8.28% accrued interest being placed in the Registry of the Court pending

---

[2] As reflected in **Exhibit 2**, the DOJ recommended between 15-18% relator share awards to the other relators.

[3] This figure was calculated as follows:
- $345,521,261 x 55.155% (per Allocation Order) = $190,572,253
- $190,572,253 x 20% relator share = $38,114,450 (combined relator share award for both Relator Vinca and Relator Sweeney)
- $38,114,450 x 50% = $19,057,225 (Relator Vinca's one-half portion of $38,114,450 combined relator share award)

{BC00270420:1}

disposition of the Cohen Firm's Charging Lien. Pursuant to the Contingency Agreement and the Cohen Firm's Charging Lien, the Cohen Firm is entitled to forty percent (40%) of Vinca's recovery as compensation for legal services, totaling $7,150,000 (plus interest).

## LEGAL STANDARD

Although federal courts do not recognize a common law lien for attorneys' fees, federal courts do "give effect to the laws of the states in which they are held." *Gottlieb v. GC Financial Corp.*, 97 F. Supp. 2d 1310, 1311 (S.D. Fla. 1999). The Eleventh Circuit has discussed Florida's charging lien requirements, as follows:

> Under Florida law, the equitable right of attorneys to have costs and fees owed for legal services secured by the judgment or recovery in a lawsuit has been recognized for over a century. *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383, 1384 (Fla.1983). The equitable mechanism recognized by Florida law for securing this right is an attorney's charging lien. *Id.* **In order for an attorney's charging lien to be imposed, Florida law requires: (1) a contract between the attorney and client: (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for a lien**. *Id. at 1385*.

*In re Washington*, 242 F.3d 1320, 1323 (11th Cir. 2001) (emphasis added). Importantly, an attorney's charging lien "relates back to the commencement of the services rendered by the attorney on behalf of the client and takes effect from that time." *Shepard v. Fla. Power Corp.*, 2011 WL 2144769, at *3 (M.D. Fla. May 12, 2011) (citation omitted).

## I.    The Cohen Firm's Charging Lien Should be Enforced

### A.  There is a valid contract between the Cohen Firm and Vinca.

The parties do not dispute that on January 11, 2011 Vinca, together with Sweeney, entered into the Contingency Agreement with the Cohen Firm. (Ex. 1). For the reasons discussed in the Cohen Firm's Brief Regarding Evidence to Consider in Charging Lien Determination, and incorporated herein for the sake of brevity, the contingency occurred prior to Vinca's discharge of

the Cohen Firm in March 2018, and entitles the Cohen Firm to the full amount of its stated fees pursuant to the Contingency Agreement. (Dkt. 264, Part I); *Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 650, 652–53 (11th Cir. 1990) (applying Florida law). By the time of discharge, the Cohen Firm had "performed all that they were contracted to achieve pursuant to their contingency fee agreement with [Vinca] before he discharged them." *Zaklama*, 906 F.2d at 652–53. Thus, pursuant to the Contingency Agreement, the Cohen Firm is entitled to forty percent (40%) of Vinca's recovery.

Separately, the Cohen Firm entered into an Addendum to the Contingency Agreement (attached hereto as **Exhibit 3**) engaging attorney Kevin Darken ("Darken") of the Kevin J. Darken Law Group, LLC ("Darken Firm") to act as co-counsel in this action. Vinca had terminated the Cohen Firm by the time the Addendum was entered into, and did not execute the Addendum, which is a private contract between attorneys. Consequently, the Addendum is irrelevant to this Court's analysis.[4]

### B. There was an express understanding that payment was contingent upon recovery and would be paid from the recovery.

---

[4] Any fee dispute between Darken and the Cohen Firm concerning the Addendum does not fall within this Court's ancillary jurisdiction and is better suited for resolution in state court. The "ancillary jurisdiction doctrine is often utilized to adjudicate the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due to the attorneys for work performed in the lawsuit." *Am. Fed'n of State, Cty., & Mun. Employees (AFSCME) Council 79 v. Scott*, 949 F. Supp. 2d 1239, 1243–44 (S.D. Fla. 2013); *accord Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650 (11th Cir.1990) (adjudicating post-judgment attorneys' fees disputes under Florida law charging liens). The Darken-Cohen dispute, however, arises from a private contract between attorneys, the Addendum, that is "wholly tangential to the federal question claims raised by [Vinca] and thus, are not integral to the main proceeding and do not provide a basis for ancillary jurisdiction." *Scott*, 949 F. Supp. at 1245 (citation omitted). Other district courts have similarly declined to exercise ancillary jurisdiction over disputes between attorneys as to the proper division of fees earned in the underlying litigation because it is unrelated to the original suit. *See In re Hijacking of Pan Am. World Airways, Inc. Aircraft at Karachi Int'l Airport,* 698 F.Supp. 479, 482 (S.D.N.Y.1988) (finding fee disputes between an attorney who resigned as a shareholder of a law firm and his former firm were not germane to civil litigation regarding a hijacked airplane because the dispute "does not involve the clients directly."). Accordingly, only the Cohen Firm's dispute with Vinca as to the amount of the fee owed to the Cohen Firm is a proper question for this Court. The validity and import of the Addendum between Darken and the Cohen Firm falls outside the jurisdiction of this Court and must be resolved in state court.

The plain language of the Contingency Agreement is unambiguous on its face, specifically providing that the Cohen Firm is entitled to "forty percent (40%) of any recovery. . . . includ[ing] any monetary recovery on behalf of the clients." (Ex. 1, p. 2). The Contingency Agreement further unambiguously provides that "[s]hould the Clients elect to adopt a settlement at any stage of the proceedings . . . it is agreed that the Attorneys' fees shall be calculated on the cost of the structured settlement, or if the cost is unknown, on the present money value of the total settlement." *Id.*

Under federal and Florida law, extrinsic evidence is not admissible to contradict the terms of an unambiguous contract. *See, e.g.*, *Stewart v. KHD Deutz of Am., Corp.*, 980 F.2d 698, 702 (11th Cir. 1993); *Vocelle & Berg, L.L.P. v. IMG Citrus, Inc.*, 125 So. 3d 843, 844 (Fla. 4th DCA 2013). More importantly, extrinsic evidence is not "even admissible to establish ambiguity; any ambiguities must be created by the language of the contract itself." *Stewart*, 980 F.2d at 702 (citations omitted). Only where a contract is susceptible to more than one interpretation is it considered ambiguous. *Id.* "When a contract's terms are not susceptible to more than one meaning, a court may not indulge in interpretation or resort to extrinsic evidence." *Vocelle*, 125 So. 3d at 844. Because the terms of the Contingency Agreement unambiguously provide that payment was contingent upon recovery and would be paid from the recovery, the Court cannot look outside of the document itself or rely on extrinsic evidence that directly contradicts the terms of the unambiguous agreement.

Furthermore, the Cohen Firm performed legal services pursuant to the Contingency Agreement, including the negotiation of a monetary settlement followed by a substantial recovery for Vinca. (Ex. 2 & Dkt. 239). The Contingency Agreement required the Cohen Firm to present Vinca's claims to state and federal governments, file the necessary qui tam actions on Vinca's behalf, and pursue the qui tam action. (Ex. 1, p. 1). The Cohen Firm filed the Vinca/Sweeney

Complaint on January 26, 2011 (Dkt. 2), and represented Vinca throughout the district court proceedings, through and including the Shire Settlement, the Allocation Order, and the acceptance of the relator share on January 19, 2018. Accordingly, the Cohen Firm clearly performed all services that it was contracted to achieve. It presented Vinca's claims, filed and participated in the qui tam action on Vinca's behalf, obtained a favorable allocation as the "predominant driver of the settlement with Shire," and obtained a monetary recovery for Vinca pursuant to the agreement with the DOJ on January 19, 2018. Because the Cohen Firm performed all services it was contracted to achieve pursuant to the Contingency Agreement prior to its discharge, it is entitled to full compensation for those services pursuant to the Contingency Agreement. *See Walia v. Hodgson Russ, LLP*, 28 So. 3d 987, 989 (Fla. 4th DCA 2010) (Florida charging lien attaches to "tangible fruits" of a lawyer's services).

### C.  Vinca disputes the amount of the fee owed to the Cohen Firm.

The third requirement for enforcement of a charging lien is "an attempt by the client to avoid paying or a dispute as to the amount of the fee." *In re Washington*, 242 F.3d at 1323. Vinca, now represented by MacFarlane Ferguson, has disputed whether the Cohen Firm is entitled to a portion of his recovery, and maintains that any fee owed should be determined by a quantum meruit analysis rather than pursuant to the Contingency Agreement and Charging Lien. (Dkt. 263). As evidenced by MacFarlane Ferguson's arguments and filings in this case (*see* Aug. 21, 2019 Hr. Tr. 12-14 & 21; Dkt. 263), Vinca has unequivocally disputed whether the Cohen Firm is entitled to the full forty percent (40%) fee pursuant to the Contingency Agreement, thus satisfying the third requirement for enforcement of the Charging Lien. *See Shepard*, 2011 WL 2144769, at *4 (finding that the third requirement for a charging lien was met, where client expressed great dissatisfaction with his former counsel's conduct of a mediation, and the circumstances suggested that the client

would not agree to pay former counsel a substantial portion of a settlement; holding it was "reasonable to infer that the plaintiff challenges at least the amount of the attorney's fee, if not entitlement, thereby satisfying the third requirement for a charging lien.").

### D.  The Cohen Firm gave timely notice of the request for a lien.

The last requirement to enforce a charging lien is timely notice. *In re Washington*, 242 F.3d at 1323. In this regard, "all that is required . . . is for the attorney to file the notice of lien or otherwise pursue the lien in the original action prior to its termination." *Brown v. Vermont Mut. Ins. Co.*, 614 So. 2d 574, 580 (Fla. 1st DCA 1993); *accord Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986) ("In order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the *original action*."). An attorney claiming a charging lien is "obligated to notify his clients in some way before the close of the original proceeding that he intend[s] to pursue the charging lien." *Mones, P.A. v. Smith*, 486 So. 2d 559, 561. The Cohen Firm fulfilled this requirement by filing its Notice of Attorney Charging Lien on May 15, 2018, which was shortly after Vinca terminated the Cohen Firm, well before the disbursement of any funds to Vinca, and prior to the close of this action. (Dkts. 167 & 239).

### CONCLUSION

The Cohen Firm's Charging Lien (Dkt. 167) should be enforced and this Court should award the Cohen Firm its full forty percent (40%) fee[5] as compensation for its legal services, totaling $7,150,000 (plus interest). The Contingency Agreement is a valid contract between the Cohen Firm and Vinca, which specifically provided that payment to the Cohen Firm was contingent upon Vinca's recovery in this action. As demonstrated in the Cohen Firm's brief at Dkt. 264, the contingency occurred prior to the Cohen Firm's discharge and Vinca obtained a recovery

---

[5] Per the terms of the Contingency Agreement, the referring firm of Saady and Saxe, P.A. is entitled to receive 25% of the Cohen Firm's 40%.

under the Shire Settlement. Vinca has disputed the 40% fee owed to the Cohen Firm, and the Cohen Firm provided timely notice of its request for a lien. Accordingly, Receiver Steven S. Oscher respectfully requests this Court enter an order (i) enforcing the Charging Lien for professional services rendered and costs advanced by the Cohen Firm against the proceeds that Relator Brian Vinca recovered in this matter, (ii) awarding the Cohen Firm its fully earned 40% fee, and (iii) disbursing to the Cohen Firm the $7,150,000 (plus interest) held in the Court's Registry.

Respectfully submitted,

*/s/ Pedro F. Bajo, Jr.*
Pedro F. Bajo, Jr. (FBN: 966029)
Bajo Cuva Cohen Turkel
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Tel: (813) 443-2199
Fax: (813) 443-2193
pedro.bajo@bajocuva.com
*Counsel for Steven S. Oscher*
*Receiver for Barry A. Cohen, P.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of November 2019, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will serve a true and correct copy on all parties of record.

*/s/ Pedro F. Bajo, Jr.*
Attorney

{BC00270420:1}