UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**
ex rel. BRIAN VINCA and
**JENNIFER STAUP SWEENEY,**          Case No. 8:11-CV-176-T30AEP

    Plaintiffs,

v.

**ADVANCED BIOHEALING, INC.,**

    Defendant.
_____/

### RELATOR VINCA'S MOTION TO DISQUALIFY COUNSEL

COMES NOW Relator, Brian Vinca ("Relator Vinca"), by and through his undersigned counsel, and hereby moves this Honorable Court for an order disqualifying Kevin J. Darken, Esquire, and the Kevin J. Darken Law Group, LLC, as counsel for Barry A. Cohen, P.A., and in support thereof states the following:

#### Introduction

1.  Kevin J. Darken, Esquire, and the Kevin J. Darken Law Group, LLC (together, "Darken") filed a "Notice of Appearance" as counsel for Barry A. Cohen, P.A. ("BACPA") on September 1, 2020 (DE 362). In addition, Darken filed as an exhibit to the Notice, the "Declaration of Kevin M. Cohen," acting as Personal Representative for the Estate of Barry A. Cohen, who hired Darken and is purporting to waive any conflicts inherent in Darken's representation of BACPA. (Doc 362-1)

2.  First, Darken is forever conflicted from representing BACPA in this action because he was counsel for Relator Brian Vinca ("Relator Vinca") when Darken was with BACPA. Relator Vinca is the opposing party in the matter *sui juris*, the attorneys' fee dispute. An aggravating

factor: Kevin M. Cohen ("Cohen, Jr.") and Darken are co-conspirators to a fee-splitting scheme of the proceeds. They cannot conspire together to waive inherent conflict in order to overcome the attorney-client conflict precluding adverse representation of disparate parties when Darken previously represented Relator Vinca in the underlying *qui tam* action. Now Darken, through his own firm, has been hired by Cohen, Jr., and Darken signed a written kickback contract to share the proceeds with Cohen, Jr. as a condition of his representation of BACPA.

3. Second, Cohen, Jr. purports to have authority to hire Darken pursuant to an Addendum between BACPA and its lender, Counsel Financial Services ("CFS"). This claim is unsupportable as it does not defeat the conflict, and upon examination of the Addendum agreement, it is invalid and unenforceable against Relator Vinca because he is a necessary party who did not agree to its terms. Individually and together, these reasons prove the maxim that the ends cannot justify the means, and disqualification is mandated.

## Rule of Law

4. Darken should be well-informed[1] as to the ethical and legal parameters of conflict. "In the Middle District of Florida, counsel is governed by the Rules of Professional Conduct of the Rules Regulating the Florida Bar ("Florida Rules of Professional Conduct"). *See* Local Rule 2.04(d)." *Mitchell v. Hunt*, 2017 WL 1157897, at *3 (M.D. Fla. 2017). Local Rule 2.04(d) provides that "[t]he professional conduct of all members of the bar of this Court ... shall be governed by the Model Rules of Professional Conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida to govern the professional behavior of the members of The Florida Bar."

5. Disqualification is mandated by the Florida Rules of Professional Conduct:

---

[1] A graduate of Yale, Harvard, and a former Assistant U.S. Attorney, Darken regularly reminds this Court and state jurists of his matchless curriculum vitae on the litigants' side of the bench.

> "Motions to disqualify are governed by two sources of authority," the local rules of the court in which they appear, and federal common law. *Herrmann v. GutterGuard, Inc.,* 199 Fed.Appx. 745, 752 (11th Cir.2006) (applying the Georgia Rules of Professional Conduct in addition to federal common law). "If a district court bases its disqualification order on an allegation of an ethical violation, 'the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power.' " *Id.* (citing *Schlumberger Techs., Inc. v. Wiley,* 113 F.3d 1553, 1561 (11th Cir.1997)). "Instead, '[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule.' " *Id.*

*U.S. ex rel. Bumbury v. Med-Care Diabetic & Medical Supplies, Inc*., 101 F.Supp.3d 1268, 1273 (S.D.Fla.,2015).

6. Rule 4–1.9 of the Florida Rules of Professional Conduct states:

> A lawyer who has formerly represented a client in a matter must not afterwards: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

7. "There is a two-prong test for disqualification of counsel under Rule 4–1.9(a): first, the party seeking disqualification must show he had an attorney-client relationship with the opposing lawyer; and second, that the matters in the pending suit are "substantially related" to the matters or cause of action in which the attorney previously represented the movant." *Mitchell v. Hunt*, 2017 WL 1157897, at *4 (M.D. Fla. 2017), citing *Cox v. Am. Cast Iron Pipe Co.,* 847 F.2d 725, 728–29 (11th Cir. 1988).

8. Addressing the first prong summarily, it is surely undisputed that Darken represented Relator Vinca. Still, while it is well-known that, while Darken was employed by BACPA he was one of the attorneys who represented Vinca as relator in the underlying *qui tam* action, proof can be established by documentary evidence, including Darken's signature on the

3

Client's Notice of Rights and Representation Agreement contract between BACPA and Relator Vinca.  See "Exhibit A" attached hereto.

9. Furthermore, Darken's claims of lien filed on his own behalf, on behalf of the Kevin J. Darken Law Group, LLC, on behalf on behalf of Jennifer Sweeney, and on behalf of BACPA, are his own testamentary evidence to his attorney-client relationship with Relator Vinca. (DE 167, DE 232, and DE 233).

10. Regarding the second prong, the fee issue and the underlying *qui tam* prosecution are self-evidently 'substantially related."  They are merely different stages of the same action.  Likely one cannot locate matters more substantially related.  Darken formerly advocated, as an employee of BACPA, on behalf of Vinca as relator.  Darken's current representation is as advocate against Relator Vinca on the same matter.  However, his fee entitlement efforts are not on behalf of BACPA, rather,they are pursuant to the fee-splitting contract Darken signed for which he, and others who did not work on this case, cast lots and expect shares.  CFS also has its blanket security interest BACPA's lender.  Accordingly, when he is lining his own pockets, Darken cannot wash his hand claiming his representation is on behalf of BACPA.  The conflict of interest for commonality is readily apparent:  the matter(s) even travel under the same style and case number.  If either the former and current representations by counsel are substantially related or the attorney actually learned information in the prior representation that is relevant to the current representation, a conflict exists. *U.S. ex. rel. Bumbury v. Med–Care Diabetic & Medical Supplies, Inc., supra*, 101 F. Supp. 3d at 1274, citing *Freund v. Butterworth,* 165 F.3d 839 (11th Cir.1999).  This is not a low standard:

> "the focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representations .... [W]hen dealing with ethical principles, we cannot paint with broad strokes. The lines are fine and must be so marked. The conclusion in a particular case

4

> can be reached only after painstaking analysis of the facts and precise application of precedent. Therefore, the onus is on the movant to delineate[ ] with specificity the subject matters, issues, and causes of action presented in [the] former representation ... [so] the district court [can] determine if the substantial relationship test has been met. Merely pointing to a superficial resemblance between the present and prior representations will not substitute for the careful comparison demanded by our cases."

*Mitchell v. Hunt*, 2017 WL 1157897, at *4 (M.D.Fla., 2017)(quotations omitted).

11. But in this scenario, the lines of proving the substantial relationship test have been met. An invoice provided from BACPA[2] reveals that Darken claims to have spent sufficient hours on the Vinca/Sweeney *qui tam* matter such that his involvement in the matters, including the fee claims for co-relator Sweeney, is sufficient for disqualification. *See*, *e.g. Stone v. Bowen*, 2017 WL 3017709, at *4 (S.D. Fla. 2017).

12. Relator Vinca can sufficiently demonstrate from documentation alone that, on their face, the subject matters of the present and prior representations are the same, indistinct, even undistinguishable. Accordingly, there exists the irrebuttable presumption that a substantial relationship exists between the present and prior representations and Darken must be disqualified for insuperable conflict.

13. Apparently, Darken and Cohen, Jr. believe that they can circumvent this conflict by embellishing the spectre of what is actually the narrow ruling of Judge Neilsen in the Thirteenth Circuit Court action styled *Counsel Financial Services, LLC, vs. Barry A. Cohen, P.A.*, Case No. 19-CA-00740 (the "Receivership"), which reversed the appointment of a receiver for BACPA[3] and somehow conflate it to mean that—conflict be damned!— Cohen, Jr. and Darken have a hall pass to make an unfettered claim against Relator Vinca. Darken has re-filed his Notice of

---

[2] See "Exhibit B." Caveat: these invoices are not vouchsafed by undersigned but are submitted to the extent they can be verified by metadata in the future, nonetheless, they are sponsored in demand of payment by BACPA and/or Darken.
[3] "Notice of Filing by Barry A. Cohen, P.A. of Order Discharging Receiver" (DE 355) (the "Reconsideration Order").

Appearance (DE 362) and expects that his current client, Cohen, Jr., can resurrect BACPA and waive all conflicts.  But they cannot conspire to line their own pockets.  Together with Barry A. Cohen ("Cohen Sr.") and Dominic Massari ("Massari"), Cohen, Jr. and Darken conspired together to split the *qui tam* attorneys' fees, and thus they are ethically precluded from profiting from their own scheme.[4]  Darken has admitted to the conspiracy in deposition for the Receivership, stating that Cohen Sr. "would only agree that I would receive a certain percentage of the attorney's fees which was 18.5 percent.  So I got 18.5 percent of the gross attorney's fees and in return, I agreed to pay these—make these payments that he required."  See "Exhibit C," Deposition of Darken, p. 35.  Massari corroborated this kickback scheme.  See "Exhibit D."  Deposition of Massari, p. 105, li10-12, 20-25, p. 106 li 1.  After Cohen Sr.'s death, in October 2018, Cohen, Jr. codified the fee-splitting agreement Darken made with Cohen Sr. in writing and Darken signed it.  This agreement compels Darken to appropriate 40% of each co-relator's gross *qui tam* award as attorneys' fees, and then to fee-split that fee, keeping only 18.5% for himself as counsel, and dividing the remainder in express amounts to attorney Cohen, Jr. (between $600,000 and $700,000), as well as honoring a whopping $1,000,000 demand made by Massari to Cohen Sr. before his death. Additional fees are also to be paid to others not affiliated with this action. Deposition of Darken, p. 36. l.  Incidentally, Darken has already fee-split co-relator Sweeney's attorneys' fees amongst these 'beneficiaries."  See Composite "Exhibit E," attorneys' fee closing statements for Jennifer Sweeney.

    14.    In addition to fee-splitting, attorneys Darken and Cohen, Jr. attempt to gloss over extant contract law and invoke BACPA's incomplete contract with CFS, known as the Addendum

---

[4] An uberconflict if there ever was one.

See "Exhibit F," to claim that BACPA had a right to transfer its interests, even though this contract is missing the requisite signature of the client, Relator Vinca. Darken claims that BACPA's rights against Relator Vinca are transferred to him pursuant to Judge Neilsen's Reconsideration Order.

15. Attached to Darken's Notice of Appearance is a Declaration of Kevin Cohen. (DE 362-1) This Declaration reads more like a *post hoc* effort to recast events in a manner which is more consistent with Darken and Cohen, Jr.'s self-interests and is a textbook example of the purpose of Rule 4-1.9, Rules of Professional Conduct.[5] For example, Cohen, Jr. actually declares, "under the Addendum Contract and Letter of Authorization agreed to among Barry A. Cohen, Counsel Financial Services, LLC, and Kevin. J. Darken Law Group, LLC, both of which Judge Nielsen recognized as being in effect and legally binding on all parties. . .."

16. This is an ultimate conclusion of law which Judge Neilsen did not reach. The enforceability of the Addendum against Relator Vinca, a party to the contract was not an issue before him. The Receivership ruling was limited to the issue of *receivership appointment*. Extension of the Reconsideration Order into the rights and interests of Relator Vinca—a nonparty to the Receivership—is an overreaching and self-serving interpretation. The Reconsideration Order contains no language which can even be extended to mean that the Addendum "is in effect and legally binding on all parties," and for good reason: Relator Vinca is a party necessary to the Addendum pursuant to its terms. On the face of the Addendum contract, pursuant to paragraphs 7, 8, 11 and the concluding paragraph, the Addendum specifically requires acceptance by the client. Relator Vinca never signed, accepted, or ratified it.[6] In Florida,[1] general contract law

---

[5] Darken and Cohen, Jr., along with Massari and others, have a written fee-splitting agreement which Darken signed in October 2018 and which codifies the terms Cohen Sr. required as a condition precedent to agreeing to the Addendum transferring his cases to Darken.

[6] Nor was he even consulted. The Addendum was signed in September 2018 by Cohen Sr., less than a week before his death. It was signed by Darken on November 1, 2018, after he signed Cohen, Jr.'s kickback fee-splitting contract in October. Representatives of CFS also signed the Addendum in November of 2018. Relator Vinca never saw the

provides that "'Mutual assent is an absolute condition precedent to the formation of the contract. Absent mutual assent, neither the contract nor any of its provisions come into existence.' *Gibson v. Courtois,* 539 So.2d 459, 460 (Fla.1989)." *Bodywell Nutrition, LLC v. Fortress Systems, LLC,* 2011 WL 31074, at *2 (S.D.Fla.,2011).

17.     Relator Vinca never assented to any agreement with CFS, as demonstrated by the blank signature lines for 'client' on the Addendum. Even in one case where several documents containing a venue clause were signed, but the signatories had no authority to bind the plaintiff, a Florida court refused to enforce the clause against the plaintiff.' *See Cross–Valente Constr., Inc. v. Pinellas Indus., Inc.,* 479 So.2d 258, 260 (Fla.Dist.Ct.App.1985)." *Id* at *3 (S.D.Fla.,2011).

18.     Where, as here, the signatories to the Addendum had no authority to bind Vinca, they cannot enforce the Addendum against his interests. Neither Cohen Sr., Darken, Cohen Jr., or any other party involved in the fee-splitting kickback conspiracy can change Vinca's choice of counsel, or any of the terms of the prior Representation Agreement with BACPA, nor could the godlike decisions of these moneychangers in the Temple make Vinca's decisions for him after he rejected Darken's unilateral pronouncement that he was assuming the lead counsel role in the *qui tam* case.

19.     The Addendum could not change Relator Vinca's choice of counsel, or any of the terms of the Representation Agreement with BACPA, nor could the godlike decisions of these moneychangers in the Temple make Relator Vinca's decisions for him after Darken told him unilaterally that he was assuming the lead counsel role. Because Judge Neilsen's ruling is not as liberal as Darken's wishful interpretation, it has absolutely no effect on Relator Vinca's right to unconflicted counsel.

---

Addendum, agreed to the terms of the Addendum, signed the Addendum, or agreed to the Darken-Cohen, Jr. kickback fee-splitting agreement.

20. At this juncture, contract law intersects with ethical rules. The Addendum is a contract which, on its face and by its very terms, includes Relator Vinca as a necessary party to be valid (*supra.*) Therefore, Darken's claim that he is authorized pursuant to the Addendum to assume the role of counsel is a legal impossibility. Relator Vinca cannot be bound by an invalid, incomplete "agreement." Relator Vinca is not governed by terms for which he never contracted.

21. In his factual findings, Judge Nielsen ruled in his Reconsideration Order that BACPA closed in December of 2017. (DE 355). A law firm must give notice to clients that the firm is being dissolved and provide options to the clients to choose representation by any member of the dissolving law firm, or representation by other lawyers or law firms." Fl R Prof Conduct, Rule 4-5.8 (2). This did not occur, rather, Darken simply informed Relator Vinca that his case was being "transferred" from BACPA to Darken, and no other alternative was presented. In addition to breaching this duty, neither BACPA nor Darken met any of the procedural requirements of Fla. R. Jud. Admin. 2.060 for withdrawal. According to subsection (j) of Rule 2.060, an attorney must file a motion setting out the reasons for withdrawing and the name and address of the client. The motion must be set for hearing, and the notice and the motion must be served on the client and opposing counsel.

22. Instead, in an apparent effort to fly under the radar, in March of 2018, Darken filed a paper with the court adding his firm to the signature blocks, which was preceded by the defunct BACPA firm's signature block. (DE 167). When his clients, Co-relators Sweeney and Vinca, queried as to the change in counsel, and whether such change required paperwork or signatures on contracts, Darken falsely replied "No." See "Exhibit G," email from Jennifer Sweeney to Kevin Darken, March 14, 2018.

23. There is good reason why former counsels BACPA and Darken did not inform their *qui tam* clients of the changes behind the scenes at BACPA, and even, when prompted, misinformed them. To be transparent with their clients would have provided them with the opportunity to seek representation at-will. Instead, Relator Vinca was never advised of his rights by his former counsel in spite of these ethical duties and procedural requirement. Even when the co-relators asked about the process, they were misled. Even unaware of the back-channel monkeyshines between Cohen Sr., Cohen, Jr., Massari and Darken, when Relator Vinca was informed that lead counsel was changing, he began to smell a rat, and sought advice elsewhere. Darken did not accept Relator Vinca's caution gracefully. In fact, Darken attempted to dissuade Relator Vinca using both strong language and, in an email, inaccurate conclusions of law intimating that Relator Vinca would lose his *qui tam* award to attorneys' fees. See "Exhibit H," email from Darken. Such breach of fiduciary duty to his client when he was counsel should preclude Darken from ever being counsel against his client. Relator Vinca should not be forced today to face counsel who betrayed him yesterday.

24. [T]he attorney is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity." *Smyrna Developers, Inc. v. Bornstein*, 177 So.2d 16, 18 (Fla. 2d DCA 1965). See also *FDIC v. Martin*, 801 F. Supp. 617, 620 (M.D.Fla.1992) ("The attorney client relationship does ... place a fiduciary duty on the part of the attorney."); *Armour & Co. v. Lambdin*, 16 So.2d 805, 811– 12 (Fla.1944) (There is a fiduciary or trust relationship between attorney and client.); *Fernandez v. Cunningham*, 268 So.2d 166, 168 (Fla. 3d DCA 1972) (Attorney must deal with client in good faith.). *Resolution Trust Corp. v. Holland & Knight*, 832 F.Supp. 1528, 1531 (S.D.Fla.,1993). Where, as here, when former counsel failed to represent Relator Vinca with forthrightness, honesty, loyalty and fidelity,

he should not now profit from his breach of fiduciary duty and act as his former client's adversary in the same action, and this conflict cannot be waived by a co-conspirator and interested party. Inevitably, Kevin Darken and his law firm must be disqualified.

**WHEREFORE** Relator Brian Vinca requests this Honorable Court enter an Order disqualifying Kevin J. Darken, Esquire, and the Kevin J. Darken Law Group, LLC, as counsel for Barry A. Cohen, P.A., and any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED this 4th day of September, 2020.

> */s/ Noel P. McDonell*
> Noel P. McDonell, Esq.
> Florida Bar No.: 0899232
> Zoila Lahera, Esq.
> Fla. Bar. No. 1012323
> MACFARLANE FERGUSON & MCMULLEN
> One Tampa City Center
> 201 N. Franklin Street, Suite 2000
> Tampa, FL  33602
> (813) 273-4200 – Telephone
> (813) 273-4396 - Facsimile
> Primary Email:            npm@macfar.com
> Secondary Email:     zla@macfar.com
>                                        vac@macfar.com
>                                        ash@macfar.com
> Attorneys for Relator Brian Vinca

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system on this 4th day of September, 2020, which will send electronic notice to all counsel of record designated therein.

> */s/ Noel P. McDonell*
> **Attorney**