# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel*. BRIAN VINCA and
JENNIFER STAUP SWEENEY,

      Plaintiffs,

v.                                    Case No. 8:11-cv-176-SCB-AEP

ADVANCED BIOHEALING, INC.,

      Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on the charging liens of Barry A. Cohen,

PA ("Cohen Firm") and Saady & Saxe, PA ("Saady Firm"), (collectively "Former

Counsel") asserted against their former client, Brian Vinca ("Vinca") (Doc. 167)

and Vinca's opposition (Doc.170). These matters were referred to Magistrate

Judge Anthony Porcelli who, after conducting an evidentiary hearing over the

course of five days, issued a Report and Recommendation ("the R&R") in which

he recommended that Former Counsel's charging liens be recognized and enforced

to the extent that Former Counsel be awarded a *quantum meruit* award in the

amount of $6,128,500 or 87% of the $7,150,000 principal being held in the Court

registry. (Doc. 495).[1] In response to the Cohen Firm's motion for clarification, which Vinca opposed, the Magistrate Judge clarified his report to include a recommendation that in addition to the principal, accrued interest held in the Court registry be awarded and divided commensurate to the principal sum such that 87% of the accrued interest be allotted to Former Counsel and 13% to Vinca.

All parties were furnished copies of the R&R and were afforded the opportunity to file objections to it, pursuant to 28 U.S.C. §636(b)(1). Vinca filed lengthy objections to the R&R. (Doc.507). Former Counsel did not file objections; however, the Saady Firm filed a Motion to Strike Vinca's Objections (Doc. 508), which this Court denied (Doc. 511). Thereafter, both the Cohen Firm and the Saady Firm filed responses to Vinca's objections. (Docs. 515 and 516).

## I. STANDARD OF REVIEW

After conducting a *de novo* determination of those portions of the report or findings or recommendations to which objections are made, a district judge may accept, reject, or modify in whole or in part the findings or recommendations of a magistrate judge. 28 U.S.C. §636(b)(1)(C). Objections to a magistrate judge's report and recommendation must "pinpoint the specific findings that the party

---

[1]  United States District Judge James Moody, who referred the matters, subsequently recused himself and the case was reassigned to the undersigned judge pursuant to the Court's blind rotation system on December 9, 2021.

disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009). For an objection to be considered by the district court, "[i]t is critical that the objection be sufficiently specific and not a general objection to the report." *Macort v. Prem, Inc.*, 208 F. App'x. 781, 784 (11th Cir. 2006). In the absence of specific objections, there is no requirement that the district judge review factual findings *de novo* even in the absence of an objection, *Garvey v. Vaughn*, 933 F. 2d 776, 779 n.9 (11th Cir 1991). However, the district judge must review legal conclusions *de novo* even in the absence of an objection. See *Cooper-Houston v. Southern Ry.*, 37 F3d 603, 604 (11th Cir. 1994).

Pursuant to its obligation to make a *de novo* determination of those findings and recommendations to which there is an objection, this Court has read and reviewed the R&R (Doc. 495), Vinca's Objections thereto (Doc. 507), the Cohen Firm's Response to Vinca's Objections (Doc. 515), the Saady Firm's Response to Vinca's Objections (Doc. 516), the other pertinent filings include the transcripts and exhibits of the five- day evidentiary hearing before the Magistrate Judge, (Docs. 480, 518, 519, 520 and 521) and the post-charging lien hearing briefs. (Docs. 487, 488 and 489). The Court now, upon careful consideration, adopts that Report and Recommendation for the reasons that follow.

## II. BACKGROUND AND STATEMENT OF FACTS

In the fall of 2010, Vinca consulted with attorney Claire Saady ("Saady") of the Saady Firm to seek advice about pursuing a wrongful termination case against Advanced Biohealing Inc. n/k/a Shire Regenerative Medicine, Inc. ("Advanced Biohealing"). During the consultation, Vinca detailed for Saady allegations about a scheme at Advanced Biohealing in which he and other Advanced Biohealing employees were paying kickbacks to doctors and providers. Saady knew that attorneys Barry A. Cohen ("Cohen") and Kevin Darken ("Darken") of the Cohen Firm were experienced *qui tam* lawyers, and she told Vinca that she could approach them about his allegations to see if they would be interested in pursuing the matter. Vinca agreed and requested that Saady set up a meeting with the Cohen Firm. Prior to his initial meeting with Saady, Vinca previously made statements to agents of the Federal Bureau of Investigation ("FBI") about the Advanced Biohealing kickback scheme. He also called a government hotline and provided a tip about the alleged kickback scheme.

Sometime in October or November of 2011, Vinca and Saady met with Darken to discuss whether the Cohen Firm would pursue a *qui tam* action against Advanced Biohealing on Vinca's behalf. Eventually, Jennifer Stoup Sweeney ("Sweeney") was included as a co-relator with Vinca, and Sweeney and Vinca

4

decided to retain the Cohen Firm to pursue their allegations against Advanced Biohealing. Specifically, in January of 2011, Vinca and Sweeney entered into a contract for legal representation (the "Retainer Agreement") with the Cohen Firm, in which the Cohen Firm would represent Vinca and Sweeney jointly as relators in a *qui tam* action against Advanced Biohealing. (Docs. 491-1 & 490-2). Pursuant to the Retainer Agreement, Vinca and Sweeney agreed to pay the Cohen Firm 40% of any recovery. (Doc. 491-1, at 2). The Retainer Agreement was signed by Vinca and Sweeney, and by Darken on behalf of the Cohen Firm. (Doc. 491-1, at 5). It was also signed by Saady on behalf of the Saady Firm (Doc. 491-1, at 5). Pursuant to the Retainer Agreement, the Saady Firm would serve as additional counsel to Vinca and Sweeney in conjunction with the Cohen Firm, and the Saady Firm would receive 25% of the attorneys' fees, while the Cohen Firm would receive 75%. (Doc. 491-1, at 4-5).

Throughout the Cohen Firm's representation of Vinca, Darken remained Vinca's primary point of contact with the Cohen Firm and Vinca never had any substantive meetings or discussions with Cohen about his case until the two of them met in approximately November 2016. (*See* Doc. 485-49). In fact, Darken was the lead attorney on the matter and handled the majority of the work in the case, including most communications with Vinca and Sweeney as well as the

5

drafting and filing of the pleadings and memoranda with the Department of Justice ("DOJ") and the Court. (*Id.*).

On January 26, 2011, Former Counsel initiated the instant *qui tam* action on behalf of Vinca and Sweeney, as co-relators against Advanced Biohealing for violations of the False Claims Act ("FCA"), 31 U.S.C. §3729 *et seq*., based upon allegations of excessive and fraudulent billing by Advanced Biohealing to Medicare (the "Complaint") (Doc. 2), which they subsequently amended (the "Vinca Complaint") (Doc. 37). The Vinca Complaint also asserted a claim for unlawful retaliatory discharge in Count II ("Vinca Retaliation Claim"). (Doc. 37). Specifically, Vinca and Sweeney filed the *qui tam* action against Advanced Biohealing, raising several claims on behalf of the United States against Advanced Biohealing under the FCA and a retaliation claim pursuant to 31 U.S.C. § 3730(h) (Doc. 37, ¶¶ 25-38).

According to the Vinca Complaint, Vinca was employed by Advanced Biohealing as a Sales Representative in the Tampa, Florida, region from July 2008 to January 2011, and Sweeney worked as a Reimbursement Specialist at Advanced Biohealing beginning in January 2009 (Doc. 37, ¶¶ 5-6). Further, the Vinca Complaint alleges that Advanced Biohealing caused private physicians to submit false claims to the Medicare program, in violation of the Anti-Kickback Statute, by

providing illegal remuneration to physicians to induce them and their staff to purchase and use Dermagraft, an artificial skin tissue product intended to treat diabetic foot ulcers, on Medicare patients (Doc. 37, ¶¶ 7-9, 18-30).

The instant action was the first of six FCA *qui tam* cases filed against Advanced Biohealing related to unlawful kickbacks it provided to physicians and other healthcare providers to induce them to purchase Dermagraft.[2] On January 3, 2017, the United States sought to intervene in the instant action for purposes of settlement. (Doc. 66). Given the other pending *qui tam* cases, on June 13, 2017, Vinca and Sweeney filed, through Former Counsel, a Motion to Consolidate Cases, seeking the consolidation of all six FCA *qui tam cases* filed against Advanced Biohealing. (Doc. 68). The District Judge granted the request to consolidate and accepted the United States' proposed allocation of the settlement proceeds amongst the six relator actions, such that settlement proceeds were distributed as follows: 55.155% for the Vinca Complaint; 40.314% for the Harvey Complaint; 3.5299% for the Medolla Complaint; 0.4% for the Petty Complaint; 0.35% for the Webb

---

[2]   On May 13, 2011, Mark Harvey ("Harvey") filed the second *qui tam* complaint (the "Harvey Complaint"), on March 15, 2012, Joseph Medolla ("Medolla") filed the third *qui tam* complaint, on November 21, 2012, Daniel Petty, Christopher Bell, Kyle Richardson, and Tara Denney filed the fourth *qui tam* complaint (the "Petty Complaint"), on April 19, 2013, Heather Webb ("Webb") filed the fifth *qui tam* complaint (the "Webb Complaint"), and on February 14, 2014, Antonio Montecalvo ("Montecalvo") filed the sixth *qui tam* complaint (the "Montecalvo Complaint").

Complaint; and 0.25% for the Montecalvo Complaint (Doc. 131). Subsequently, the United States sought a dismissal of this case pursuant to the settlement. (Doc. 137). Upon consideration, the District Judge entered an Order dismissing all claims against Advanced Biohealing. (Doc. 140).

On February 2, 2018, however, Montecalvo submitted a Notice of Appeal challenging the consolidation of the cases and the disbursement of the settlement funds. (Doc. 148). Other appeals soon followed. (Docs. 153, 157 & 158). Given the pending appeals, on February 21, 2018, the District Judge stayed this case as to all remaining issues until resolution of the appeals. (Doc. 156).

On March 28, 2019, Vinca submitted a Motion for Substitution of Counsel, by which he requested that Former Counsel be removed and that Attorneys Noel P. McDonell and Bryen N. Hill and the law firm of Macfarlane, Ferguson & McMullen (collectively, "Current Counsel") be substituted as counsel of record (Doc. 161). The District Judge granted Vinca's request and removed Former Counsel from the case, substituting Current Counsel as Vinca's counsel of record. (Doc. 162). Following the substitution, on April 10, 2018, the United States moved for a limited lift of the stay to deposit the settlement funds, in the sum of $86,380,315.48, into the Court registry (Doc. 163). The District Judge then lifted the stay and accepted the settlement funds into the Court registry pending a final

determination as to the disbursement of the funds amongst the six *qui tam* cases. (Doc. 164). Soon thereafter, on May 15, 2018, Former Counsel filed the charging liens that are now before this Court. (Doc. 167).

Nearly a year later, on February 19, 2019, the District Judge granted the parties' joint request for mediation by a magistrate judge. (Doc. 181). Mediation began in March 2019 and continued into April 2019. (Docs. 183, 191, 204). On April 23, 2019, the parties entered into an agreement known as the "Settlement Agreement Concerning Relators' Shares" (the "Final Settlement Agreement") in which the parties resolved all disputes concerning the allocation of the proceeds of the settlement reached between the DOJ and Advanced Biohealing (the "Advanced Biohealing Settlement") and the percentage of allocation to be awarded to each of the relators in the six *qui tam* actions. (Docs. 204 & 227).

Under the terms of the Final Settlement Agreement, the parties moved to dismiss their appeals in the United States Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit") and agreed that no further appeals concerning the allocation of the six relators' shares would be pursued. (Doc. 227). Given the Final Settlement Agreement, on May 17, 2019, the parties sought a release of the funds maintained in the Court registry (Doc. 227), which the District Judge granted a few days later, directing that the funds be distributed pursuant to the terms of the Final

Settlement Agreement and the parties' agreed allocation. (Doc. 227, at 2-3). On May 24, 2019, the funds were disbursed as previously ordered. (Doc. 239). Significantly, a total share of the settlement proceeds was allotted to Vinca in the amount of $17,875,000, with $7,150,000 (40% of Vinca's total share) retained in the Court registry *pending the resolution of Former Counsel's charging liens*, and the remaining $10,725,000 was disbursed to Vinca through Current Counsel (*See* Doc. 229).

Beginning on February 23, 2021, the Magistrate Judge conducted the five-day evidentiary hearing in order to resolve Former Counsel's charging liens, during which Darken, Saady, and Vinca were called as witnesses to testify. (*See* Docs. 456, 460, 464, 470, & 479). Upon the conclusion of the evidentiary hearing, the parties submitted their respective post-hearing briefs. (Docs. 487, 488, & 489).

## III. THE REPORT AND RECOMMENDATION

The core issue to be resolved by the Magistrate Judge was what amount of attorneys' fees, if any, Former Counsel should receive from the $7,150,000 plus interest maintained in the Court registry. Former Counsel argued that they were entitled to all of it while Vinca argued they were entitled to none of it. After consideration of the parties' submissions and the evidence adduced at the hearing, the Magistrate Judge recommended that Former Counsel's charging lien be

recognized to the extent that $6,128,500 plus interest is a just *quantum meruit* award which is fair to Former Counsel and Current Counsel and to Vinca. In making that recommendation, the Magistrate Judge found that Former Counsel did not abandon or withdraw from Vinca's case, but instead, Vinca discharged Former Counsel on March 21, 2018. (Doc. 495, pp. 55-58). However, the Magistrate Judge further found that Former Counsel did not fully perform under the Retainer Agreement and recommended that Former Counsel's request that it receive payment for the entire $7,150,000 in attorney fees be denied.

The Magistrate Judge then undertook the task of making a *quantum meruit* determination of the reasonable value of the services rendered by Former Counsel as compared to those rendered by Current Counsel and then considering the reduction necessary for damages, if any, suffered by Vinca as a result of the misconduct by Former Counsel. (Doc. 495, p. 61).[3]  In considering the work performed by both Former Counsel and Current Counsel, the Magistrate Judge found that a reasonable and fair allocation for the work performed by each was 90% for Former Counsel and 10% for Current Counsel. He found that current counsel had negotiated and secured a total recovery of $17,825,00 for Vinca, but

---

[3]  *See Searcy, Denny, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So.2d 947 (Fla. Dist. Ct. App. 1993).

that the recovery was based almost entirely on Former Counsel's prior work. "Current Counsel asserted no new legal theories, no challenges to the Court's Allocation Order or to the DOJ's Relator's share, and no objections to any results achieved by Former Counsel. In other words, Former Counsel's prior work formed the basis of the recovery." (Doc. 495, pp. 66-67). The Magistrate Judge's apt analogy to baking a cake likened Former Counsel's work to deciding the type of cake to make, shopping for and mixing the ingredients and baking the cake compared to Current Counsel completing the cake by frosting it. (Doc. 496, p. 67). The Magistrate Judge then recommended that Former Counsel's services be valued at $6,435,000 or 90% of the $7,150,000 being held in the Court Registry. (Doc. 495, p. 68)

Finally, the Magistrate Judge set about determining whether Former Counsel's attorney's fees should be forfeited or reduced by damages, if any, suffered by Vinca as a result of Former Counsel's malpractice or misconduct. The Magistrate Judge first considered Vinca's claim that Vinca suffered actual damages by Former Counsel's malpractice in failing to assert VA claims in the Complaint and found that Vinca failed to produce sufficient evidence to demonstrate any damages for failure to investigate or include VA claims in the complaint. (Doc. 496, p. 73).

The Magistrate Judge then considered Vinca's arguments that Former Counsel should forfeit all, or part, of their attorneys' fees based on allegations of that Former Counsel prioritized their own financial interests over Vinca's by: (1) failing to be transparent regarding Cohen being terminally ill and the Cohen Firm's financial viability; (2) permitting Dominic Massari ("Massari"), a disbarred attorney who worked for the Cohen firm as a paralegal, to commit the unauthorized practice of law ("UPL") in the settlement of Vinca's case in violation of the Florida Statutes and the Rules Regulating The Florida Bar; (3) inducing Vinca to obtain a usurious gap loan to cover his financial expenses; (4) attempting to get Vinca to pre-pay attorney's fees; and (5) failing to reduce the settlement demand immediately after the September 2017 mediation in an effort to settle the case.

With respect to Vinca's argument that Former Counsel knowingly permitted Massari to commit UPL, the Magistrate Judge found that Vinca suffered no actual damages by any of the alleged unlicensed activities and that there are better forums in which to adjudicate Vinca's claims related to Massari's alleged UPL. (Doc. 495 p. 81). As to Vinca's argument concerning the gap loan, the Magistrate Judge found that Former Counsel committed no misconduct because it was Vinca who sought Former Counsel's help in obtaining a gap loan and that by identifying

possible lenders Former Counsel did not require Vinca to obtain the loan, nor did they negotiate the loan or make any money from it. And regarding Vinca's argument that Former Counsel failed to reduce the settlement demand immediately after the 2017 mediation, as Vinca and Sweeney requested, the Magistrate Judge found that Vinca did not suffer any harm and, in fact, increased his position of strength by waiting.

Ultimately, the Magistrate Judge found that Vinca did suffer some harm from the totality of circumstances created by Former Counsel and that the harm warranted an additional forfeiture of part of the *quantum meruit* award. Specifically, the Magistrate Judge found that Vinca lost confidence in Former Counsel and "given Massari's participation on his case, Cohen's health and the Cohen Firm's financial instability, Vinca chose to terminate Former Counsel, even though such termination resulted in harm to Vinca, as he was required by the circumstances to obtain new counsel." (Doc. 495, p. 84). The Magistrate Judge then recommended that an additional 3% or $214,500 be subtracted from the *quantum meruit* award for the harm caused Vinca by Former Counsel.

In conclusion, the Magistrate Judge recommended the reasonable value of Former Counsel's services was $6,435,000, and that this amount should be offset by $214,500.00 in damages for the harm suffered by Vinca and by an additional

$92,000, for the statutory fees previously obtained by Former Counsel for a total *quantum meruit* award of $6,128,500. (Doc. 495, pp. 85-86). In a subsequent Order, the Magistrate Judge supplemented his recommendation to include the accrued prejudgment interest and recommended that it be divided as 87% to Former Counsel and 13% to Vinca, commensurate to the principal sum. (Doc.501).

Vinca filed a 55-page Relator's Objections to the R&R (Doc. 507), to which the Cohen Firm and the Saady Firm filed responses (Docs. 515, 516). Neither the Cohen Firm nor the Saady Firm filed any objections to the R&R.

## IV. DISCUSSION

"Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held." *Gottlieb v. GC Fin. Corp.*, 97 F. Supp. 2d 1310, 1311 (S.D. Fla. 1999) (quoting *Webster v. Sweat*, 65 F.2d 109, 110 (5th Cir. 1933)); *accord Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 650, 652 (11th Cir. 1990) (indicating that the rights and obligations of parties to a contract that provides for attorneys' fees upon the happening of a contingency are governed by state law). Under Florida's common law, a charging lien may be utilized to enforce the equitable right of an attorney to have fees owed for legal services secured to the attorney by the judgment or recovery in a lawsuit. *See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom,* 428

15

So.2d 1383, 1384 (Fla. 1983); *Flynn v. Sarasota Cnty. Pub. Hosp. Bd.*, 169 F. Supp. 2d 1363, 1368 (M.D. Fla. 2001).

To impose a charging lien, a court in equity must find: (1) an express or implied contract between the attorney and the client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for a lien. *Id.* at 1385. Considering these factors, Former Counsel's charging liens are properly before the Court for resolution. Namely, (1) the Retainer Agreement between Vinca and Former Counsel expressly memorialized their agreement that 40% of any recovery constituted the appropriate compensation for attorneys' fees (Doc. 491-1); (2) the payment of attorneys' fees to Former Counsel is in dispute, since Vinca asserts that either no monies or limited monies should be paid to Former Counsel as attorneys' fees; and (3) Former Counsel timely submitted notice of their requests for charging liens.

In resolving Former Counsel's charging liens, the Magistrate Judge found that under the totality of the circumstances, a *quantum meruit* award in the amount of $6,128,500 is warranted given the Retainer Agreement and the significant services performed by Former Counsel. Vinca states that he objects to the R&R to

the limited extent that it fails to apply or misapplies the relevant statutes, case law and rules of procedure that prohibit a party from receiving attorneys' fees which are unjust enrichment from unlawful activity. Specifically, the unlawful activity about which Vinca complains is the alleged unauthorized practice of law ("UPL") by disbarred attorney Dominic Massari ("Massari") who was employed by the Cohen Firm as a paralegal. Vinca, however, goes on to claim that the R&R overlooks other instances of misconduct or malpractice by Former Counsel. Finally, Vinca points to the recusal of Judge Moody on December 1, 2021(Doc. 496) and suggests that had the Magistrate Judge been afforded knowledge of the relationship between Massari and Judge Moody, the district judge presiding over the case, it may have influenced the R&R.[4]

Vinca's objections to the R&R are overruled for the reasons explained below:

### 1. Dominic Massari's Unauthorized Practice of Law

Vinca objects that the Magistrate Judge misapplied or failed to apply the law as it relates to Former Counsel's unjust enrichment from UPL In essence, Vinca argues that Former Counsel are entitled to no attorneys' fees because the fees are

---

[4] Judge Moody recused himself on December 1, 2021, two days after the R&R was filed based on the fact that "one of the issues involves Domenic Massari who is the father of the undersigned's daughter in law." (Doc. 496)

the direct result of a scheme to defraud Vinca by Former Counsel's aiding and assisting Massari's practice of law while he was disbarred. The conduct which Vinca argues is the UPL is Massari's participation in the September 2017 mediation, Massari's direct communication with Vinca and with opposing counsel, and Massari's part in securing a litigation loan for Vinca.

To state a cause of action under any legal theory that arises from the UPL, a pleading must state that the Florida Supreme Court "has ruled that *the specified conduct at issue* constitutes the unauthorized practice of law." *Goldberg v. Merrill Lynch Credit Corp.*, 35 So.3d 905, 907 (Fla. 2010) (emphasis added). It is clear that the Rules Regulating The Florida Bar--Rule 3-6(d) --prohibit a disbarred attorney from having contact with any client and from engaging in conduct that constitutes the practice of law. The testimony at the hearing proved that Massari had direct contact with Vinca regarding his case. It is also clear from the testimony at the hearing that Massari had contact with Vinca regarding the litigation loan. However, it is not clear what role Massari played in the 2017 mediation and what contact he had with opposing counsel. Vinca cites no case law and the Court is unaware of any Florida Supreme Court case that holds that a paralegal who assists a Florida licensed attorney with the mediation and settlement of a case constitutes UPL.

Notwithstanding, the Magistrate Judge made no finding in the R&R that Massari did, or did not, engage in the UPL or that Former Counsel did or did not aid and abet Massari in the UPL (Doc. 495, pp. 81-84). After careful consideration of the record evidence, he found that Massari's role was mostly limited to following the directives of Darken or Cohen and that Vinca suffered no actual damages as a result of Massari's alleged UPL (*Id.*). He also observed that the record on this issue was lacking and questioned why, given that the focus of the alleged UPL was on Massari's alleged misconduct, Massari was not called as a witness in the evidentiary hearing. (*Id.*). The undersigned agrees. If Vinca's focus of the unjust enrichment and fraud claim was on Massari's conduct, it is curious why he was not called as a witness in the evidentiary hearing.

The Magistrate Judge did not excuse Massari's alleged UPL, but rather, found it should be sanctioned and that there are other appropriate forums "where a record could be more fully developed to determine whether Massari committed UPL and whether Former Counsel enabled such activity, and what sanction, if any, is warranted." (Doc. 495, p. 82).[5] Punishing the offending lawyer is not the

---

[5]   The Court notes that Vinca already pursued Massari's alleged UPL in state court, in which he asserted claims for malpractice. *See Vinca v. Cohen*, No. 18-CA-7935 (Fla. Cir. Ct. Dec. 28, 2018) (Vinca's Amended Complaint raising claims of professional negligence and unjust enrichment against Cohen, Darken, and Saady and *respondeat superior* claims against Former Counsel, the Barry A. Cohen Legal Team, and the Darken Firm, based, in part, on hiring and using Massari to perform legal services). Further, Massari petitioned the Florida Supreme Court

function of fee forfeitures. *See Scheller*, 629 So. 2d at 953-54 (stating that a court does not act as a "lawyer disciplinary process" and that such activity should occur in a different forum, such as the Bar disciplinary process, while the court should determine whether the ordinary legal remedies will fairly uphold the high standards governing lawyers); *Eakin v. United Tech. Corp.*, 998 F. Supp. 1422, 1429 (S.D. Fla. 1998) (noting that the case law on the issue is clear that Disciplinary Rules do not create private causes of action). Therefore, the Magistrate Judge's UPL analysis is consistent with both Florida and federal law.

Furthermore, it appears to the undersigned that Vinca's present UPL claim is belied by the fact that he offered to stay with Former Counsel—if they agreed to a reduced rate of 30% with no additional appellate fees—after he became aware of the basis for his Massari UPL claim through discussions he had with other outside counsel in January, 2018. (Doc. 492-7; Doc. 495, p. 84). It was only after Former Counsel refused to accept a reduced fee that Vinca fired them. Based on the record before it, this Court, like the Magistrate Judge, cannot make a finding that even if Massari engaged in the UPL that Vinca suffered any specific damages because of Massari's conduct.

---

for disciplinary revocation without leave to seek readmission, which was granted by the Florida Supreme Court. *See In re: Massari*, CASE NO.: SC19-1347, 2019 WL 5624587, at *1 (Fla. Oct. 31, 2019).

After a thorough analysis of Vinca's UPL arguments, the Magistrate Judge properly concluded that regardless of Vinca's theories of UPL, and whether he had established any of the theories, a total forfeiture of any *quantum meruit* award based on Massari's UPL "would result in an unjust windfall for Vinca given the substantial benefit of work performed by Former Counsel on Vinca's case and the lack of tangible harm to Vinca from Massari's participation if the case." (Doc. 495, p. 82). However, the Magistrate Judge did find that Vinca established he suffered "intangible harm in the form of lost trust in Former Counsel's loyalty and good faith," as a result of Massari's conduct and the undersigned agrees.

## 2. Other Fraudulent Activity or Malpractice

Despite stating at the outset of his Objections that he objects to the R&R *only to the limited extent* that it fails to apply, or misapplies, the relevant statutes, case law and rules of procedure that prohibit a party from receiving attorneys' fees for fraud in UPL, Vinca proceeds to touch on other alleged acts of misconduct or malpractice by Former Counsel—namely, hiding from Vinca the Cohen Firm's $35 million dollar debt and Cohen's terminal health situation along with the imminent closing of the Cohen Firm, the Cohen Firm's request that Vinca prepay attorneys' fees, Vinca's usurious loan facilitated by the Cohen Firm and a surreptitious attempt by Darken and the Cohen Firm to substitute Darken's own

firm as counsel. (Doc. 507, pp. 5-7). Vinca also objects to the finding in the R&R

that the complaint in this action could not have included the VA claims because

Former Counsel could not plead sufficient details. Vinca believes that these bad

acts compel a total forfeiture of any *quantum meruit* fee award to Former Counsel.

These additional objections, however, lack the required specificity and the

background discussion Vinca provides to support them reads like a rambling,

stream of consciousness. (*See* Doc. 507, pp. 13-34; 46-54). As such, these

additional objections are subject to a clearly erroneous standard of review. *Gropp*

*v. United Airlines, Inc.*, 817 F.Supp. 1558, 1562 (M.D. Fla. 1993). And there was

no clear error here.

 The Magistrate Judge properly looked to the outcome of the underlying case

to determine whether Vinca's financial outcome was diminished by Former

Counsel's alleged wrongful acts or omissions. Fee forfeitures are generally

inappropriate when a lawyer's violation of legal duty "do[es] not significantly

harm the client" and "when a lawyer's acts, although in breach of duty to the

client, cause[s] no harm to the client." *Scheller*, 629 So. 2d at 952. Former

counsel's *quantum meruit* fee can be reduced only by the amount of damages

suffered by the client as a result of former counsel's misconduct. *Cooper v. Ford &*

*Sinclair, P.A.*, 888 So.2d 683, 690 (Fla. Dist. Ct. App. 2004).

After careful consideration, the Magistrate Judge concluded that "the total forfeiture of any *quantum meruit* award under the circumstances of this case would be inappropriate" based on the following specific factual findings that were not specifically objected to by Vinca:

(1) That "Former Counsel's work conferred a substantial benefit to Vinca";

(2) That "Vinca suffered no actual damages by any of the alleged unlicensed activities";

(3) That "Former Counsel performed substantial work on Vinca's case without Massari's participation," which began "during the January 2017 initial mediation";

(4) That "Massari's role on Vinca's case mostly was limited to following the directives of either Darken or Cohen";

(5) That "Vinca does not identify any activities by Massari that caused actual damage to the financial outcome of Vinca's case";

(6) That "Massari's suggestion for the percentage allotment matrix for the Second Settlement Agreement with [Relator] Harvey enhanced the potential value of Vinca's case";

(7) That "by January 2018, Former Counsel had positioned Vinca's *qui tam* action to recover a potential of $25,741,334.01, absent any changed circumstances upon appeal" while "Current Counsel negotiated and secured Vinca a total recovery of $17,875,000 in the Final Settlement Agreement"; and

(8) That "[w]ithout question, Current Counsel secured such a recovery for Vinca based almost entirely upon Former Counsel's prior work."

(Doc. 495 at 65-66, 81-82). Given these unobjected-to factual findings, the Magistrate Judge correctly rejected the total forfeiture sought by Vinca.

Former counsel is entitled to receive a fee for work performed before committing misconduct. *Hill v. Douglas*, 271 So. 2d 1, 4 (Fla. 1972); *James T. Butler, P.A. v. Walker*, 932 So. 2d 1218, 1221 (Fla. Dist. Ct. App. 2006). When former counsel is discharged for cause, a court "should reduce the *quantum meruit* award by the amount of damages, if any, suffered by the [former client] . . . . [I]f the [client's] damages do not exceed a *quantum meruit* fee, the court is then free to consider whether forfeiture of some or all of the *quantum meruit* fee as already reduced by the client's damages is appropriate under [the] circumstances." *Scheller*, 629 So. 2d at 955. The client bears the burden of proving any damages resulting from former counsel's termination for cause. *Shackleford v. Sailor's Wharf, Inc.*, 2018 WL 10373434, at *3 (M.D. Fla., Jan. 19, 2018). The court looks at the totality of the circumstances to fashion an award that is fair to both the attorney and the client. *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 369 (1995). The balancing of relevant factors and the ultimate determination of the *quantum meruit* award are matters within the sound discretion of the trial court. *Id.*

The R&R recommendation that Former Counsel are entitled to $6,128,500.00, after deductions, is amply supported. Former Counsel represented Vinca from January 2011 to March 2019, a period of over eight years. Former

24

Counsel obtained a 20% relator's share for Vinca, a substantial percentage allotment of the Advanced Biohealing Settlement proceeds (Doc. 495, p. 49). Former Counsel constructed the primary framework for Vinca's case and performed most of the work that resulted in his significant recovery. (*Id.* at 67). They did not abandon or withdraw from Vinca's case, but were fired toward the end of the case when Vinca lost faith and confidence in Former Counsel based on Massari's participation in the case, Cohen's health, the Cohen Firm's financial problems and the unwillingness of Former Counsel to be open and honest about those problems, and then Darken leaving the firm. Vinca justifiably sought new counsel and therefore some amount of damages should be awarded Vinca in the form of a reduction in the attorney fees. The Magistrate Judge's recommendation that a 3% reduction or $214,500 ($7,150,000 x .03) is an amount that recognizes the intangible harm caused by former Counsel is reasonable.

### 3. Judge Moody's Recusal

Vinca's objection regarding Judge Moody's recusal from this case is not an objection to any of the findings and recommendations in the R&R inasmuch as the recusal occurred after the Magistrate Judge filed his R&R. Vinca's suggestion that knowledge of the relationship between Judge Moody and Dominic Massari might

have influenced the R&R is pure speculation.[6]  Therefore, the Court will not

address this objection further.

  **ACCORDINGLY**, it is now **ORDERED AND ADJUDGED**:

  1.The Court overrules relator Brian Vinca's Objections (Doc. 507) and

adopts the Magistrate Judge's Report and Recommendation (Doc. 495) and

incorporates it by reference in this Order.

  2. In consideration of the totality of the circumstances, this Court finds that

Former Counsel is entitled to 90% of the $7,150,000 in the Court registry or

$6,435,000 in satisfaction of their charging liens. However, the Court further finds

that this amount should be reduced by $214,500 as damages for the intangible

harm caused by Former Counsel, leaving $6,220,500. This amount should then be

offset by the previously obtained $92,000 in statutory fee, leaving a total amount of

$6,128,500. ($6,435,000 - $214,500 - $92,000).

  Therefore, $6,128,500 is awarded to Former Counsel as a fair and

reasonable *quantum meruit* award in satisfaction of Former Counsel's charging

liens (Doc. 167). In addition, 87% of the prejudgment interest held in the Court

registry is awarded to Former Counsel and 13% to Vinca.

---

[6] Vinca concedes that he does not hold Judge Moody or Judge Porcelli responsible because they were most likely unaware of Massari's involvement, but he suggests it is another example of Massari and Former Counsel's fraud and deception.

3. This matter is referred to the Magistrate Judge to resolve how and when the monies should be distributed from the Court registry.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of April, 2022.

_____
SUSAN C. BUCKLEW
United States District Judge

*Copy provided to:*
The Honorable Anthony E. Porcelli

27